Mario Iskander, SBN #327025
ISKANDER LAW, APC
1111 N. Brand Blvd Suite 308
Glendale CA 91202
Tel. (240) 439-1970
Email mario@iskanderlaw.com

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSEPH JAMES and BRIAN McBRIDE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ARSALAN GHANBARI; MOHAMMAD GHAFARINIA a/k/a MATT NIA; DANIEL GAVILANES; BETTER RISE CAPITAL LLC; BETTER TAX RELIEF, LLC; BETTER COMPANIES LLC; LENDVIA LLC; RANGE VIEW MANAGEMENT LLC; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 8:26-cv-01489-FWS-BFM<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND TO STAY THIS ACTION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently with Declaration of Rounak Adhikary; and [Proposed] Order]<br><br>Date: September 24, 2026<br>Time: 10:00 a.m.<br>Ctrm: 10D<br><br>Judge: Hon. Fred W. Slaughter<br><br>Complaint Filed: June 11, 2026<br>1st Am. Complaint Filed: July 6, 2026<br>; |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE t**hat on September 24, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 10D of the Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Santa Ana, California 92701, before the Honorable Fred W. Slaughter, Defendants Arsalan Ghanbari; Mohammad Ghafarinia a/k/a Matt Nia; Daniel Gavilanes; Better Rise Capital LLC; Better Tax Relief, LLC; Better Companies LLC; Lendvia

LLC; and Range View Management LLC (collectively, "Defendants") will and hereby do move this Court for an order

1) compelling Plaintiff Brian McBride to arbitrate his claims against Defendants on an individual, non-class basis pursuant to Sections 2, 3, and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 2–4,
2) staying Mr. McBride's claims and the class allegations premised on them pending completion of that arbitration pursuant to 9 U.S.C. § 3; and
3) striking or staying those class allegations.

This Motion is made on the grounds that Plaintiff McBride assented to the Lendvia **Terms of Use**; that four of the Defendants are expressly named contracting parties to those Terms of Use and the remainder are covered by the Terms' own extension to affiliated entities and to the members, managers, officers and directors of the named entities; <u>that the Terms contain a mandatory arbitration agreement</u> that by its own text reaches "claims under 47 U.S.C. § 227 *et seq.*" — the sole federal statute under which Plaintiffs sue.

**Notes:**

1. Defendants expressly limit this Motion to Plaintiff McBride; they do not seek to compel Plaintiff James at this time and reserve the right to do so; that the Terms contain an enforceable class-action waiver requiring individual arbitration; and that a stay is mandatory under 9 U.S.C. § 3 upon a finding that the claims are referable to arbitration.

2. This Motion is filed concurrently with, and is not subordinate to, Defendants' Motion to Dismiss under Rule 12(b)(6). Defendants file the Rule 12 motion in the alternative and expressly subject to this Motion, and hereby expressly reserve — and do not waive — their right to arbitrate. Defendants respectfully request that the Court resolve this Motion first and defer the Rule 12 motion pending that resolution.

3. This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on August 10, 2026.

This Motion is based on this Notice, the following Memorandum of Points and Authorities, the concurrently filed declaration of Lendvia's custodian of records and the exhibits thereto, the pleadings and papers on file, and any argument the Court may entertain.

Respectfully submitted,

ISKANDER LAW

Date: August 25, 2026

s/ /

Mario Iskander, Esq
Attorneys for Defendants

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs' First Amended Complaint (FAC), at paragraphs 22 and 30, supplies the basis for this Motion. It alleges that Range View "operates the website whose *Terms of Us*e the Enterprise invokes as the source of both *its arbitration provision and the consent it claims from consumers*," (FAC ¶22), and that those Terms "purport to govern claims under 47 U.S.C. § 227." (FAC ¶ 30). Plaintiffs are right about the scope of the instrument. They are mistaken in their contention that it does not bind consumers.

The Lendvia Terms of Use state on their face that the website "is owned and operated by **Range View Management LLC, Lendvia LLC, Better Debt Solutions LLC, [and] Better Tax Relief LLC,**" (bold added) and define the contracting "Companies" to include Range View. (See, Exhibit #1 at p. 1). Those Defendants are therefore not strangers reaching for someone else's contract; they are named parties to the very agreement Plaintiffs put at the center of this case. The arbitration provision requires that disputes between the user and those entities, "including claims under 47 U.S.C. § 227 et. seq.," be "resolved exclusively through final and binding arbitration, rather than in court." Ex. 1 at p. 6.

Contract formation is shown through the declaration of the verified consent company engaged by defendants and supporting exhibits, not inference. (Dec. of Rounak Akhikary) On November 11, 2025, Mr. McBride completed a Verified Consent–certified session on the Lendvia platform, and it was recorded as it happened. The session replay shows his name, his home address, his Social Security number and the telephone number the First Amended Complaint pleads as his, FAC ¶ 54, being entered into Lendvia's online form, followed by the ticking of a box consenting to Terms of Use that includes binding arbitration. The First Amended Complaint alleges he "never visited any Better or Lendvia website, never completed any application or lead form, and never electronically signed or authorized the record." FAC ¶ 60. Its specific attacks are directed at a different record — a December 5, 2025 lead submission on which this Motion does not rely. The FAC does not address the November certification that is the subject of this motion.

Defendants do not ask this Court to take formation on faith. Defendants accept that they bear the burden of proving that Mr. McBride assented, *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023), and that formation is for the Court rather than the arbitrator notwithstanding the delegation clause. Defendants carry that burden with the concurrently filed declaration of Rounak Akhikary, chief technical officer and custodian of records for the company that operates the verified consent program used the Defendants' website. The declaration authenticates the lead-event records and describes the systems and security procedures by which each submission was captured and attributed. *See* Cal. Civ. Code § 1633.9(a). Once assent is established, nothing remains: the Terms of Use names these Defendants, names the statute, forecloses class treatment, and mandate arbitration of disputes and claims.

## II. FACTUAL BACKGROUND

### A. Four Defendants Are Expressly Named Parties to the Lendvia Terms of Use.

The Terms of Use, effective July 1, 2024, open with the sentence: "This website ("Website") is owned and operated by Range View Management LLC, Lendvia LLC, Better Debt Solutions LLC, Better Tax Relief LLC." (Dec. of R. Adhikary, Ex. 1 at 1). They then define the operative term: "As used herein the term the 'Companies' refer to Range View Management LLC, Lendvia LLC, Better Debt Solutions LLC, Better Tax Relief LLC., Riseup Financial Group LLC., and Better Rise Capital LLC." *Id.* A separate sentence defines "we," "our" and "us" to mean those six entities "and their respective members, managers, shareholders, employees, agents, officers, directors, affiliated entities, and all entities to which the Companies provide services." Id. The first page states in capitals that the agreement "CONTAINS A MANDATORY ARBITRATION PROVISION, WAIVER OF JURY TRIAL AND CLASS ACTION." (Dec. of R. Adhikary, Ex. 1 at 1).

### B. The Arbitration Agreement and Class-Action Waiver.

The section titled "ARBITRATION AGREEMENT & CLASS ACTION WAIVER" is followed by a boldface, all-capitals disclosure: "THESE TERMS PROVIDE THAT ALL DISPUTES BETWEEN YOU AND US WILL BE RESOLVED BY BINDING ARBITRATION.

… YOU ALSO GIVE UP YOUR RIGHT TO PARTICIPATE IN OR BRING CLASS ACTIONS." (Dec. of R. Adhikary, Ex. 1 at 5). The operative scope clause follows on the next page and names both Range View and the TCPA by statutory citation. (Dec. of R. Adhikary, Ex. 1 at 6). The provision designates JAMS Consumer-Related Disputes rules; provides that "[t]he Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate"; and contains a delegation clause. Id. The class-action waiver requires that claims be brought "ONLY ON AN INDIVIDUAL BASIS AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE ACTION OR PROCEEDING." (Dec. of R. Adhikary, Ex. 1 at 7).

**C. The November 11, 2025 Verified Consent Record.**

On November 11, 2025, Mr. McBride completed a certified session on the Lendvia platform reflecting assent to the Lendvia Terms of Use, and those Terms expressly identify Range View among the entities entitled to enforce the arbitration agreement. (Dec. of R. Adhikary, ¶'s 20- 22. A second record — a December 5, 2025 lead submission — exists, but Defendants do not rely on it for this Motion, and the First Amended Complaint's specific attacks are addressed to that record alone. FAC ¶¶ 59, 60, 62.

***1. The November 11, 2025 Verified Consent certification.***

Lendvia uses internet lead certification authority known as verified consent. (Dec. of R. Adhikary, ¶'s 3-8, 12, 20-22) Its Certificate of Authenticity No. 108e99e9-7480-4c13-84cf-3fc0576adb37 certifies a visit to https://lendvia.com/get-started/ on November 11, 2025 at 15:07:00, from IP address 24.221.236.55, on a mobile device. **Ex. 2.**

Verified Consent captures the page as served and the user events on it — form inputs, cursor movement and clicks — and replays them as a recording. Ex. 3. The form's header displays a three-step progress indicator; the replay captures the values entered at the two recorded steps. On the contact-information step: the first name "Brian"; the last name "McBride"; the home address "15 Seagarden"; the city "Linwood"; the ZIP code "08221"; a Social Security number **[REDACTED PURSUANT TO FED. R. CIV. P. 5.2(a)(1)]**; and the email address

"mcbride78@gmail.com." On the telephone step: the telephone number 312-672-2794. (Dec. of R. Adhikary, ¶ 21)

That last value is dispositive of the pleading. Paragraph 54 of the First Amended Complaint alleges: "Plaintiff McBride's telephone number, **312-672-2794**, is assigned to a cellular telephone service." It is the number he alleges was called without his consent. The replay shows it being typed into Lendvia's form, together with his name, his residence and his Social Security number.

Each recorded step carried its own disclosure above its button — "By clicking CONTINUE," then "By clicking SUBMIT" — so the notice appeared twice. On the second step the replay shows the consent checkbox being ticked and the Submit button pressed. The disclosure adjacent to that checkbox states that by clicking Submit the user "express[es] [his] understanding and consent electronically via E-sign that [he] acknowledge[s], agree[s] and consent[s] to the Privacy Policy and **Terms of Use which includes binding arbitration**," and provides express written consent to be contacted at "the phone number provided" by "calls and/or text … using any telephone dialing system, prerecorded/artificial voice messages and/or use of an automatic dialing device or system … even if my telephone number is currently listed on any state or federal Do-Not-Call list." Ex. 3. The words "Terms of Use" appear as an active hyperlink. Ex. 2, Ex. 3.

## III. LEGAL STANDARD

The FAA makes a written arbitration provision in a contract evidencing a transaction involving commerce "valid, irrevocable, and enforceable." 9 U.S.C. § 2. On a motion to compel, the Court's inquiry is confined to "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party seeking to compel bears the burden of proving the existence of an agreement by a preponderance of the evidence. Johnson v. Walmart Inc., 57 F.4th 677, 681 (9th Cir. 2023) (citing *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)); *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019).

Where "the making of the arbitration agreement" is placed in issue, 9 U.S.C. § 4, district courts apply the summary-judgment standard of Rule 56. Hansen v. LMB Mortg. Servs., Inc., 1 F.4th 667, 670 (9th Cir. 2021). The Court gives the opposing party "the benefit of all reasonable doubts and inferences that may arise," Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1141 (9th Cir. 1991) (quoting Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 (3d Cir. 1980)), and may decide formation as a matter of law only if no genuine dispute of material fact exists. If a genuine dispute does exist, the Court "must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved." *Hansen, 1 F.4th at 672; see also Knapke v. PeopleConnect, Inc., 38 F.4th 824, 831 (9th Cir. 2022).*

Defendants state their position on the delegation clause candidly at the outset. The Terms delegate questions of "interpretation, applicability, enforceability or formation" to the arbitrator, Ex. 1 at 6, and that delegation is enforceable as to every gateway question *except* the threshold question whether the container contract was formed at all. Challenges to the existence of the contract as a whole are, in general, for the Court. Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 297–300 (2010); Kum Tat Ltd. v. Linden Ox Pasture, LLC, 845 F.3d 979, 983 (9th Cir. 2017) ("challenges to the very existence of the contract are, in general, properly directed to the court"); Knutson, 771 F.3d at 565. Defendants therefore do not ask the Court to send the formation dispute to the arbitrator. They ask the Court to decide formation — and submits the evidence necessary to decide it.

## <u>IV. ARGUMENT</u>

### A. The FAA Governs.

The FAA applies for two reasons. First, the parties designated it: "The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate, and the arbitrability of all claims and disputes between you and us." Ex. 1 at 6. Second, and independently, it applies of its own force to "a contract evidencing a transaction involving commerce," 9 U.S.C. § 2 —

construed to the full extent of the commerce power, Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 273–77 (1995). The transactions here involved a nationwide online lending-referral platform, consumers in multiple States, and interstate communications. Either ground suffices.

**B. Each Defendant May Enforce the Agreement, on Grounds That Differ by Defendant.**

Defendants state the basis for each rather than assert a single undifferentiated right, because they are not identically situated.

***1. The four named Defendants enforce directly.***

Range View Management LLC, Lendvia LLC, Better Tax Relief, LLC and Better Rise Capital LLC are each named in the Terms of Use as contracting "Companies," and again by name in the operative arbitration clause. Ex. 1 at 1, 6. A named party enforces the agreement directly; no estoppel, agency or third-party-beneficiary theory is required, and the Court need not reach the questions the California Supreme Court resolved in *Ford Motor Warranty Cases*, 17 Cal. 5th 1122 (2025), or that the Ninth Circuit addressed in *Olson v. FCA US, LLC, 172 F.4th 1033 (9th Cir. 2026)*. Both decisions address non-signatories invoking equitable estoppel to enforce a contract they had not signed. Neither reaches these Defendants, who are named parties rather than strangers invoking someone else's contract.

Plaintiffs have pleaded this. FAC ¶¶ 22, 30. Plaintiffs cannot allege these Defendants are the contracting parties for purposes of Count Two and deny them that status for purposes of enforcement.

***2. Better Companies LLC enforces as an intended beneficiary of the Terms.***

Better Companies LLC is not among the six entities enumerated as "Companies." It enforces the agreement as an intended third-party beneficiary, on the strength of the Terms' own definitional language rather than on any theory of estoppel.

A contract "made expressly for the benefit of a third person may be enforced by that person." Cal. Civ. Code § 1559. A non-signatory qualifies where the third party would in fact benefit, where a motivating purpose of the contracting parties was to provide that benefit, and

where enforcement is consistent with the objectives of the contract and the reasonable expectations of the parties. *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 830 (2019). Each element is satisfied, and the reason is the drafting. They define "we," "our" and "us" to mean the six named Companies "and their respective members, managers, shareholders, employees, agents, officers, directors, affiliated entities, and all entities to which the Companies provide services." Ex. 1 at 1. The arbitration clause is drafted to the same effect and does not depend on that definition: it reaches disputes between the user and the six named entities "and all entities to which the Companies provide services and their respective … subsidiaries, affiliates, agents, members, managers, shareholders, officers, directors, contractors, vendors, employees, and service providers." Id. at 6. Affiliates of a named Company are within the operative clause by its own terms.

A contract that names affiliates in its arbitration clause is not the generic "third party" language addressed in Ford Motor Warranty Cases. *Erickson v. Affirm Loan Services, LLC, 830 F. Supp. 3d 991, 995, 998 (C.D. Cal. 2026), is a TCPA action on that structure.* The agreement there defined the lender together with "their parent companies, wholly or majority owned subsidiaries, affiliates" as the "Transaction Parties," and gave them the right to elect arbitration. The court held the movant could enforce as a third-party beneficiary because "the plain language of the loan agreements demonstrates the parties' clear intent for defendant to be a party to the arbitration provision," even though the movant was absent from the agreements' introduction and the court could not conclude on that record that it was a signatory. Id. at 997–98. *Erickson* applied Utah law under a choice-of-law clause, but on the same principle California applies: a third party may enforce where the contracting parties clearly expressed an intention to confer the benefit. Compare Goonewardene, 6 Cal. 5th at 830.

Better Companies does not rest this on the pleading. It bears the burden of proving its status, *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1233–34 (9th Cir. 2013); *Jones v. Jacobson,* 195 Cal. App. 4th 1, 15–16 (2011), and carries it with the concurrently filed declaration and the corporate records attached, establishing its affiliation with the named Companies as it stood when Mr. McBride accepted the Terms. That timing matters. Absent language reaching present and

future affiliates, an "affiliates" clause does not extend to entities that became affiliates only after the consumer contracted. *Revitch v. DIRECTV, LLC,* 977 F.3d 713, 717–19 (9th Cir. 2020).

Two limits deserve mention. First, Defendants do not contend that Better Companies qualifies as an entity "to which the Companies provide services." A party connected to a signatory by an arms-length service relationship is not brought within a definition built on affiliation. *Toothman v. Redwood Toxicology Lab'y, Inc*., 120 Cal. App. 5th 412, 421–25 (2026). Better Companies rests on affiliation and must prove it as such. Second, an asserted corporate relationship must be documented; where a movant fails to establish the relationship it claims, the motion fails. *Gemilyan v. Rolls-Royce Motor Cars NA, LLC,* 501 F. Supp. 3d 844, 849 (C.D. Cal. 2020).

Defendants do not argue that Plaintiffs' enterprise or alter-ego allegations supply the basis for enforcement, do not adopt them, and will not be bound by them. See *Watson v. Prof'l Bus. Mgmt. Corp.,* 120 Cal. App. 5th 860, 868–71 (2026); *Barsegian v. Kessler & Kessler*, 215 Cal. App. 4th 446, 451–53 (2013). Better Companies' right to enforce rests on the instrument and on proof of its own corporate relationships, and would stand even if every enterprise allegation were stricken.

***3. The individual Defendants enforce as agents and as intended beneficiaries.***

Two independent grounds support the individual Defendants, and neither depends on estoppel.

**First, agency.** Agents of a signatory may compel arbitration where the wrongful acts for which they are sued relate to their conduct as agents, and where the claims against them arise out of or relate to the contract containing the clause. *Amisil Holdings Ltd. v. Clarium Cap. Mgmt., 622 F. Supp. 2d 825, 832 (N.D. Cal. 2007)*. Both conditions hold. Plaintiffs sue Messrs. Ghanbari, Ghafarinia and Gavilanes for conduct alleged to have been undertaken in their corporate capacities — owning, directing and authorizing the Enterprise's telemarketing. FAC ¶ 40. And the Terms expressly reach "claims under 47 U.S.C. § 227 et. seq.," Ex. 1 at 6, so claims of exactly this kind arising from the lead-generation services the Terms govern relate to the agreement. An entity acts only through its people, and an arbitration agreement would be of little

value if a plaintiff could evade it by naming officers instead of the company. *Amisil,* 622 F. Supp. 2d at 833.

Plaintiffs may answer that TCPA claims allege unauthorized calls, so the conduct sued upon cannot be agency conduct. The argument proves too much. *Amisil* asks whether the wrongful acts "relate to their behavior as agents or in their capacities as agents," not whether the principal authorized the wrong — if unlawfulness defeated the inquiry, no agent could ever invoke a principal's arbitration clause, because the acts sued upon are always alleged to be wrongful. 622 F. Supp. 2d at 832. Defendants do not rely on Plaintiffs' agency or alter-ego characterizations to establish the relationship; that showing is made by declaration and corporate records. But Plaintiffs cannot describe the individual Defendants as the directing minds of the entities for liability purposes and, in the same breath, as strangers acting outside those roles for arbitration purposes.

**Second, the Terms name them**. The operative arbitration clause reaches disputes between the user and the named entities' "agents, members, managers, shareholders, officers, directors," among others. Ex. 1 at 6. The individual Defendants are therefore enumerated by category in the arbitration provision itself, not merely in a definitional passage elsewhere in the instrument. That is express enumeration by category, not the generic "third party" language Ford Motor Warranty Cases addressed, and it satisfies *Goonewardene*'s motivating-purpose element: the drafters plainly meant to extend the agreement to individuals holding those roles. Goonewardene, 6 Cal. 5th at 830; see *Erickson*, 830 F. Supp. 3d at 998–99.

What the individual Defendants must prove is that they in fact hold those roles. A non-signatory bears that burden and must carry it with evidence rather than allegation. *Jones v. Jacobson, 195 Cal. App. 4th at 15–16; Murphy, 724 F.3d at 1233–34*. Defendants therefore do not rest on the First Amended Complaint's characterizations. The concurrently filed declaration identifies the office each individual holds in which named Company, supported by the corporate

records, and the Court may take judicial notice of the Statements of Information filed with the California Secretary of State. Cal. Evid. Code § 452(c).

Defendants do not rely on equitable estoppel for the individual Defendants. *Ford Motor Warranty Cases* holds that estoppel is unavailable where the plaintiff's claims flow "not from the contract where the arbitration clause appears, but from obligations imposed by statute or conventional fraud duties," 17 Cal. 5th at 1126, and Plaintiffs' claims arise under 47 U.S.C. § 227. See also *Olson v. FCA US, LLC, 172 F.4th 1033, 1040–42 (9th Cir. 2026)* (rejecting the argument that a plaintiff's claims are intertwined with a contract merely because he would have had no claim without it). Defendants say so rather than press a theory the Court would have to reject.

**C. Mr. McBride Assented to the Terms of Use.**

The Terms contain no general choice-of-law provision. They provide only that "[t]he arbitrator will decide the substance of all claims in accordance with the laws of the State of Wyoming," Ex. 1 at 6 — a direction to the arbitrator on the merits of claims submitted to arbitration, not to this Court on the antecedent question whether an agreement was formed. Cf. *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 64 (1995) ("the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither sentence intrudes upon the other"). California law governs formation, and the result would be the same under any potentially applicable State's enactment of the Uniform Electronic Transactions Act. California's Uniform Electronic Transactions Act gives an electronic signature the same legal effect as a handwritten one, Cal. Civ. Code § 1633.7, but the proponent must establish that the signature "was the act of the person," which "may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." Id. § 1633.9(a). Defendants do not understate what that requires. A declaration asserting that a signature is the signer's act, without explaining how the declarant knows, is insufficient. *Ruiz v. Moss Bros. Auto Grp., Inc.,* 232 Cal. App. 4th 836, 841–45 (2014). So is a record offered with no evidence at all about the

signing process: in *Fabian v. Renovate Am., Inc.*, 42 Cal. App. 5th 1062, 1069 (2019), the movant "did not provide any evidence from or about DocuSign," and the word "DocuSign" did "not appear in any of [its] moving papers." And where the credentials required are not unique to the signer, the Court of Appeal has affirmed a finding that the proponent failed to carry its burden. *Bannister v. Marinidence Opco, LLC,* 64 Cal. App. 5th 541, 545–48 (2021). What suffices is an explanation of the procedure by which the record was captured and attributed, *Espejo v. S. Cal. Permanente Med. Grp.,* 246 Cal. App. 4th 1047, 1062 (2016) — Fabian itself contrasts a declarant who proved the signature "by explaining the process used to verify the signature," where the signature bore "an identifying code." 42 Cal. App. 5th at 1068–69. The most recent decision in this line marks the same boundary from the other side: in *Garcia v. Stoneledge Furniture LLC,* 102 Cal. App. 5th 41, 53–54 (2024), the declaration failed because it did not show that only the purported signer could have signed and because the instrument itself bore no date, no time and no IP address.

Two independent vendors captured two separate sessions, and the November session was recorded as it happened and can be watched: the values appear in the fields as they are typed, the consent box is ticked, and the form is submitted. Ex. 3. Among those values are Mr. McBride's residence, his email address, his Social Security number and the very telephone number the First Amended Complaint pleads as his. FAC ¶ 54. Defendants do not ask the Court to infer the user's identity from those values; they offer the recording of the values being entered, together with the audit trail that accompanies it. A comparable audit trail carried the movant's burden — without IP evidence, and over the plaintiff's sworn declaration that she "did not sign or in any way authorize her signature" — in *Zamudio v. Aerotek, Inc.,* 733 F. Supp. 3d 931, 941–42, 946 (E.D. Cal. 2024).

The concurrently filed declaration of Rounak Adhikary is drafted to the *Espejo* standard rather than the *Fabian* one. It describes the lead-capture form and the placement of the disclosure immediately adjacent to the submit button; the contemporaneous capture of timestamp, IP address, device information and device information by an independent third party; the assignment of a unique certificate identifier to the session; the reproduction of the form as the user encountered it;

the receipt and retention of the records in the ordinary course of business; and the procedures that attribute the submission to the individual identified in it. Decl. of R. Adhikary ¶s 3-8, 11, 20-22)

**D. The Website Gave Reasonably Conspicuous Notice, and the Submission Was an Unambiguous Manifestation of Assent.**

Where a website operator cannot show that the consumer had actual knowledge of the agreement, an enforceable contract is found on an inquiry-notice theory only if the website gives "reasonably conspicuous notice of the terms to which the consumer will be bound" and the consumer "takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). Both conditions are satisfied here. Ex. 3.

Conspicuousness. Notice must appear "in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it," and a hyperlink must be "readily apparent." Berman, 30 F.4th at 856–57. The disclosure here sits immediately above the Submit button, in the direct path of the only action the form invites; the words "Privacy Policy" and "Terms of Use" appear in a contrasting color against a white field; and the step contains nothing competing for attention — a security notice, a single field, a checkbox, the disclosure, and the button, above a one-line footnote. Ex. 3. That is the configuration courts have sustained. See Oberstein v. Live Nation Ent., Inc., 60 F.4th 505, 515–17 (9th Cir. 2023); *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1015–19 (9th Cir. 2024)*; Rangel v. Experian Info. Sols., Inc.*, 749 F. Supp. 3d 1067, 1073–74 (E.D. Cal. 2024) (notice "conspicuously displayed directly above" the operative button "in regular sized, bold font"). It is not the configuration courts have rejected, in which the advisal was set in a lighter color that blended into the background and was not placed directly above or below the operative button, *Godun v. JustAnswer LLC*, 135 F.4th 699, 711–12 (9th Cir. 2025); or fell outside the user's path through the page, *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1155–58 (9th Cir. 2025).

**Assent.** A click "can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions

of an agreement." *Berman*, 30 F.4th at 857. The disclosure adjacent to the checkbox says exactly that, and it names the button: "By clicking SUBMIT, I express my understanding and consent electronically via E-sign that I acknowledge, agree and consent to the Privacy Policy and Terms of Use which includes binding arbitration." **Ex. 3**. It identifies the operative act, the operative button and the instrument assented to, and it says in the same sentence that the instrument "includes binding arbitration." That is more than *Berman* requires. Compare **Berman,** 30 F.4th at 858 ("I understand and agree to the Terms & Conditions," untethered to any act, insufficient), and *Chabolla*, 129 F.4th at 1157–58 (language referring to signing up where no "sign up" button existed), with Oberstein, 60 F.4th at 515 ("By continuing past this page, you agree to the Terms of Use").

The consumer here did more than click. The recording shows the consent checkbox being ticked and the Submit button pressed thereafter. Ex. 3. Where a user takes a separate affirmative step directed at the terms and then submits, the manifestation of assent is not ambiguous.

One evidentiary point distinguishes this record. Courts assessing conspicuousness usually work from reconstructions — screenshots a declarant attests are "substantially identical" to what the plaintiff would have seen, *Singh v. Adobe Inc.,* 797 F. Supp. 3d 1038, 1045–46 (N.D. Cal. 2025) — and those suffice. Exhibit 3 is the page as served to this user, with this user's inputs, on the date in question. Whatever else is disputed, what the screen displayed is not.

**E. The First Amended Complaint's Attacks Are Directed at a Record on Which This Motion Does Not Rely.**

The First Amended Complaint mounts three specific attacks — on an IP address, on the identity of the entity to be contacted, and on timing. FAC ¶¶ 59, 60, 62. Each is directed at the December 5 lead submission, on which this Motion does not rely. <u>None addresses the November 11 Verified Consent certification or the recorded session it certifies</u>. Defendants do not contend that a sworn, specific denial can never place formation in issue; if the Court so concludes on this record, Defendants ask it to proceed as § IV.J requests rather than deny the Motion.

To the extent the same objections are pressed against the November record: that the disclosure recites consent to be contacted by Lendvia while the calls marketed a different entity, cf. FAC ¶¶ 60, 62, conflates two questions. Whether the disclosure supplies prior express consent under § 227(b) as to a particular caller is a merits question not before the Court. What matters here is that the click assented to the "Terms of Use which includes binding arbitration" — and those Terms name Range View as a contracting "Company" and again by name in the arbitration clause. Ex. 1 at 1, 6. Assent to the Terms is assent as to every Company the Terms identify, whatever the separate consent-to-contact sentence says about who may call.

As to timing: the November 11 certification postdates the first call Mr. McBride alleges — he pleads calls beginning June 20, 2025 — and Defendants do not pretend otherwise. The date bears on the agreement's temporal reach, not on whether it was formed. The clause reaches "any and all disputes or claims that *have arisen* or may arise" — language that looks backward on its face. Ex. 1 at 6. And the parties committed questions of "interpretation" and "applicability" to the arbitrator by a delegation clause Plaintiffs have not specifically challenged; how far back the clause extends is such a question. *Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 72 (2010)*; *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68–69 (2019).

**F. Mr. McBride's Claims Fall Squarely Within the Agreement's Scope.**

There is no scope question to resolve. The clause expressly reaches "claims under 47 U.S.C. § 227 et. seq.," subject only to a small-claims exception for claims under $1,000 that has no application here: Mr. McBride pleads $500 to $1,500 per call across 218 or more calls. Ex. 1 at 6; FAC ¶¶ 57, 85. Count One is brought under 47 U.S.C. § 227(b)(1)(A)(iii). FAC ¶¶ 79–85. Count Two seeks a declaration concerning the arbitration agreement itself. FAC ¶¶ 86–91. The agreement names the statute; no construction is required. To the extent Plaintiffs contend particular claims or time periods fall outside the clause, those are questions of "interpretation" and "applicability" that belong to the arbitrator once formation is established, and Plaintiffs have not challenged the delegation provision specifically — the First Amended Complaint attacks the agreement as a whole. *Rent-A-Center,* 561 U.S. at 72; Henry Schein, 586 U.S. at 68–69. The result is a clean

division of labor: this Court decides whether the agreement was formed; every remaining question is for the arbitrator. *Williams v. Eaze Sols., Inc., 417 F. Supp. 3d 1233, 1241–42 (N.D. Cal. 2019)* (TCPA action; arbitrability delegated where the plaintiff did not specifically challenge the delegation provision).

Nor are TCPA claims of a character that resists arbitration. "[W]hile TCPA claims are statutory tort claims, such claims are not inherently un-arbitrable and may be subject to arbitration." *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1207 (S.D. Cal. 2013); see *Hooper v. Jerry Ins. Agency, LLC*, 675 F. Supp. 3d 1027, 1035–37, 1040 (N.D. Cal. 2023) (compelling arbitration of a putative TCPA class action on an individual basis and staying the case). Here the parties named the statute.

**G. Arbitration Must Proceed on an Individual Basis.**

The class-action waiver is enforceable and requires individual arbitration. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344–52 (2011); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233–39 (2013). The Court should compel arbitration of Mr. McBride's claims against Defendants on an individual basis and strike or stay the class allegations as to Defendants.

**H. A Stay Is Required Under 9 U.S.C. § 3.**

Upon a finding that the issues are referable to arbitration, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. Defendants so apply. This Motion is directed to Mr. McBride; Defendants request a stay of his claims and of the class allegations premised on them, not of Plaintiff James's individual claims. A stay rather than dismissal preserves the Court's jurisdiction to enforce the award.

**I. Defendants Have Not Waived and Do Not Waive Their Right to Arbitrate.**

Waiver requires "(1) knowledge of an existing right to compel arbitration; and (2) intentional acts inconsistent with that existing right." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023). Prejudice is no longer an element. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 416, 419 (2022). Defendants have done nothing inconsistent with arbitration. This Motion is their first substantive filing in this action; it is filed within Defendants' time to respond and

simultaneously with a Rule 12(b)(6) motion that is expressly made in the alternative and subject to this Motion. Defendants ask the Court to resolve arbitration first and to defer the Rule 12 motion, precisely so that no merits adjudication precedes the arbitrability determination. A statement of the right in a pleading "is not enough to defeat a claim of waiver," *Martin v. Yasuda,* 829 F.3d 1118, 1125 (9th Cir. 2016); Defendants do not rest on the reservation. The cases finding waiver turn on sustained litigation of the merits — seventeen months including a motion to dismiss on a key merits issue, a protective order, discovery responses and a deposition, *Martin,* 829 F.3d at 1126; eighteen months of active litigation and substantive discovery, *McBurnie v. Acceptance Now, LLC,* 643 F. Supp. 3d 1041, 1046 (N.D. Cal. 2022). Where a defendant never wavers — moving to compel within a year, never seeking or obtaining a merits ruling, and taking no meaningful discovery — there is no waiver. *Armstrong v. Michaels Stores, Inc.,* 59 F.4th 1011, 1016 (9th Cir. 2023); accord *Fox v. Experian Info. Sols., Inc.,* 718 F. Supp. 3d 1231, 1239 (E.D. Cal. 2024). No discovery has been taken and no Rule 26(f) conference has been held. Filing the Rule 12 motion separately and subject to this one is the procedurally correct course: "[g]enerally, the appropriate procedural mechanism to enforce an arbitration agreement is a motion to compel arbitration, not a motion to dismiss." *Campos v. Fresno Deputy Sheriff's Ass'n*, 441 F. Supp. 3d 945, 963 (E.D. Cal. 2020).

**J. In the Alternative, Defendants Request an Expedited Trial on Formation, Limited Formation Discovery, and a Stay of Merits Proceedings.**

Defendants' position is that the record establishes assent and that no trial is required. Should the Court conclude otherwise, Defendants do not ask it to resolve a disputed question of fact on the papers; they ask for the trial the statute provides. Section 4 directs that where "the making of the arbitration agreement … be in issue, the court shall proceed summarily to the trial thereof," 9 U.S.C. § 4, and this Court must "proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved." Hansen, 1 F.4th at 672. Defendants respectfully request that any such trial be set on an expedited schedule, and that they be permitted discovery limited to formation: Mr. McBride's use of the

telephone number pleaded at FAC ¶ 54, including its appearance on lead-generation records; the devices and electronic mail accounts associated with that number in November and December 2025; and his prior assertions of claims arising from lead-generated telemarketing. Defendants seek no merits discovery.

Any such trial should proceed to the Court. Section 4 provides that the party alleged to be in default may demand a jury trial "on or before the return day of the notice of application," and that "[i]f no jury trial be demanded by the party alleged to be in default … the court shall hear and determine such issue." 9 U.S.C. § 4. Courts in this district and elsewhere in this circuit have held that the return day is the date on which the opposition to the motion to compel is due, and that a party who does not demand a jury by then may not do so afterward. *Clifford v. Trump*, No. CV 18-02217 SJO (FFMx), 2018 WL 5263189, at *2 (C.D. Cal. Mar. 29, 2018); *Castillo v. Lowe's HIW, Inc.,* No. C13-4590 TEH, 2013 WL 12143002, at *4 (N.D. Cal. Dec. 2, 2013) ("If Plaintiff desired a jury trial on this issue, he was required to demand one in his opposition to Defendant's motion to compel arbitration or prior to the date the opposition brief was due."); *Alvarez v. T-Mobile USA, Inc.,* No. CIV. 2:10-2373 WBS GGH, 2011 WL 6702424, at *9 (E.D. Cal. Dec. 21, 2011) (so holding where the court had found "clearly a dispute as to whether the parties formed an agreement to arbitrate"). The Ninth Circuit has not addressed the question in a published decision, but has held that a plaintiff waived the right by failing to raise it in his opposition to a motion to compel. *Godhart v. Tesla, Inc.,* 855 F. App'x 399, 399–400 (9th Cir. 2021) (unpublished).

Defendants further request that proceedings on the merits be stayed pending resolution. The considerations underlying § 3 apply equally while referability is being tried: a party required to try the question of formation should not simultaneously be litigating the merits of the putative class action it contends belongs in arbitration. Absent a stay, the practical consequence of holding this Motion in abeyance is that Defendants obtain neither arbitration nor relief from the proceedings the agreement was meant to displace.

**V. CONCLUSION**

Defendants respectfully request that the Court (1) compel Plaintiff McBride to arbitrate his claims against Defendants on an individual basis under the Lendvia Terms of Use; (2) stay his claims and the class allegations premised on them pending completion of that arbitration, 9 U.S.C. § 3; and (3) grant such other relief as is just.

Respectfully submitted,

ISKANDER LAW, APC

Date: August 24, 2026

s/ /

Mario Iskander, Esq.
Attorneys for Defendants

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants, certifies that the memorandum of points and authorities contained in this brief contains 6,426 words, which complies with the word limit of L.R. 11-6.1.

Date: August 24, 2026

s/ /

Mario Iskander, Esq.
Attorneys for Defendant

**PROOF OF SERVICE**

I am over the age of 18 and am not a party to this action. My business address is 1111 N. Brand Blvd., Suite 308, Glendale, California 91202. On the date stated below I served the document described below on the parties listed below.

On August 25, 2026, I caused the foregoing document described as:

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND TO STAY THIS ACTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ROUNAK ADHIKARY**

to be served on the following parties:

| | |
|---|---|
| Mark L. Javitch (CA SBN 323729)<br>JAVITCH LAW OFFICE<br>3 East 3rd Ave., Ste. 200<br>San Mateo, CA 94401<br>Telephone: (650) 781-8000<br>Email: mark@javitchlawoffice.com | *Attorneys for Plaintiffs JOSEPH JAMES and BRIAN McBRIDE* |

[ ] (By U.S. Mail) I placed copies of the documents in sealed envelopes addressed as set forth above and deposited such envelopes in the mail at the United States Post Office in Orange County, California with postage thereon fully prepaid. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X ] BY ELECTRONIC SERVICE: By submitting an electronic version of the documents(s) to the addressee named above at his listed address for electronic communications, (email address) and by ECF.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746.

*/s/ Mario Iskander /*