Mark L. Javitch (CA SBN 323729)
Javitch Law Office
3 East 3rd Ave. Ste 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 300-0343
mark@javitchlawoffice.com

*Attorney for Plaintiff Joseph James*
and the Putative Class

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH JAMES, individually, and on behalf of all similarly situated,<br>Plaintiff,<br>v.<br>ARSALAN GHANBARI; MOHAMMAD GHAFARINIA a/k/a MATT NIA; BETTER RISE CAPITAL LLC; RANGE VIEW MANAGEMENT LLC; and DOES 1 through 10, inclusive,<br>Defendants. | Case No.: 8:26-cv-01489-FWS-BFM<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT** |

Plaintiff Joseph James ("Plaintiff"), individually, and on behalf of all similarly situated, brings this action against Defendants Arsalan Ghanbari, Mohammad Ghafarinia, Better Rise Capital LLC, Range View Management LLC, and Does 1 through 10 (collectively, "Defendants" or the "Better Enterprise") and alleges as follows upon

personal knowledge as to his own acts and experiences, and upon information and belief as to all other matters, based on the investigation of counsel.[1]

1. This case arises from a sustained, illegal telemarketing campaign carried out by a network of affiliated business-funding and debt-relief companies operating as a single enterprise under the "Better" name.

2. This is no lone telemarketer's operation. Behind the "Better" name stand more than a dozen affiliated limited liability companies—operating, management, and holding entities alike—run from a common address in Irvine, California by two principals, Defendants Arsalan Ghanbari and Mohammad Ghafarinia. The Enterprise's operating companies are owned and directed through intermediate management and holding entities that Ghanbari and Ghafarinia created in matched pairs—an architecture engineered to obscure the two men's control of the operating companies and to frustrate efforts to hold them personally accountable for the Enterprise's conduct.

3. Over a period of months, Defendants bombarded Plaintiff's cellular telephone with dozens of telemarketing calls marketing Defendants' funding and financial products, even though Plaintiff's number was registered on the National Do Not Call Registry, and even though Plaintiff never consented to receive the calls.

---

[1] Brian McBride, who was named as a plaintiff in the First Amended Complaint, has been compelled to arbitration pursuant to the Court's Amended Order of September 18, 2026 (Dkt. 30). This Second Amended Complaint is brought by Plaintiff Joseph James.

4. Many of the calls delivered artificial or prerecorded voice messages. To evade call-blocking technology and disguise the scope of the campaign, Defendants transmitted a different caller identification number for nearly every call, rotating through numerous telephone numbers.

5. The individuals who own and direct the Better Enterprise are personally responsible for this conduct. They built the enterprise and directed its telemarketing.

6. The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, prohibits initiating calls to cellular telephones using an artificial or prerecorded voice without the called party's prior express consent. Defendants violated that prohibition repeatedly and willfully.

7. A months-long, multi-brand telemarketing campaign of this kind is not built to reach one consumer. On information and belief, Defendants placed the same calls, using the same dialing infrastructure and the same rotating number pool, to thousands of other consumers nationwide. Plaintiff therefore brings this action individually and on behalf of the Class defined below for statutory damages, treble damages, and injunctive relief.

## JURISDICTION AND VENUE

8. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claim arises under the TCPA, 47 U.S.C. § 227, a federal statute.

9. This Court has personal jurisdiction over the entity Defendants because each maintains its principal place of business in, or is registered to do business in and directs

the conduct at issue from, this State, and over the individual Defendants because each resides in and directs the Better Enterprise from this State, and because the claims arise out of telemarketing they directed from this State.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendants reside in this District, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims—including the direction, origination, and supervision of Defendants' telemarketing campaign—occurred in this District.

11. Assignment to the Southern Division is proper because Defendants reside in Orange County, California.

## PARTIES

12. Plaintiff Joseph James is a natural person and a resident of Suffolk County, New York.

13. Defendant Arsalan Ghanbari, also known as "Arsi" Ghanbari, is a natural person who, on information and belief, resides in Orange County, California. According to Statements of Information filed with the California Secretary of State under penalty of perjury, Mr. Ghanbari is the sole member of RC Mgmt LLC and AGW Holdings LLC—a management entity and a holding entity through which the Enterprise's operating companies are controlled. On information and belief, Mr. Ghanbari co-owns and controls the Better Enterprise together with Mr. Ghafarinia, personally directs and authorizes the

Enterprise's telemarketing, and personally manages the Enterprise's response to consumer complaints and litigation arising from its calls.

14. Defendant Mohammad Ghafarinia, who on information and belief also uses the name "Matt Nia," is a natural person who, on information and belief, resides in Orange County, California. According to Statements of Information filed with the California Secretary of State under penalty of perjury, Mr. Ghafarinia is the sole member of MN Mgmt LLC and MNW Holdings LLC—a management entity and a holding entity within the Enterprise—is the sole member of Better Companies LLC, and is the sole member of Defendant Better Rise Capital LLC—the entity that placed the telemarketing calls to Plaintiff James. The Enterprise's own corporate filings reflect that Mr. Ghafarinia uses the first name "Matt": in the filings for Option One Processing LLC he appears both as "Mohammad Ghafarinia" and as "Matt Ghafarinia." On information and belief, Mr. Ghafarinia is a co-founder and principal of the Better Enterprise and personally directs and authorizes its telemarketing. On information and belief, the individual named as "Matt Nia" as a defendant in related TCPA litigation against the Better entities is Mr. Ghafarinia.

15. Defendant Better Rise Capital LLC ("Better Rise Capital") is a California limited liability company, formed on January 29, 2025, with its principal place of business at 2525 Main Street, Suite 410, Irvine, California 92614. Its registered agent for service of process is located at 19200 Von Karman Avenue, Suite 600, Irvine, California

92612. Better Rise Capital markets and sells business funding products under the slogan "Business Funding Done Better." According to its Statement of Information filed with the California Secretary of State under penalty of perjury, the sole member of Better Rise Capital is Defendant Mohammad Ghafarinia.

16. Defendant Range View Management LLC ("Range View") is a Wyoming limited liability company registered to do business in California, with its principal place of business at 15303 Ventura Boulevard, Suite 1190, Sherman Oaks, California. According to its Statement of Information filed with the California Secretary of State, Range View's sole manager and member is Payam Sadeghi, and Range View describes its business to the State as "Marketing." Range View operates the website whose Terms of Use state that the website is "owned and operated by" Range View, Lendvia LLC, Better Debt Solutions LLC, and Better Tax Relief, LLC—confirming that Range View operates jointly with other Better entities. In related TCPA litigation, Defendants' own counsel has identified Range View as "Range View Management d/b/a Lendvia," and has identified Lendvia LLC as "Lendvia LLC d/b/a Lendvia Financial d/b/a One Street Financial." See *Collins v. Better Debt Solutions, LLC*, No. 8:24-cv-01263 (C.D. Cal.). Range View also joined Better Debt Solutions, Lendvia, and Better Tax Relief in jointly moving to consolidate the TCPA actions arising from the Enterprise's calls. On information and belief, Range View operates as part of the single Better Enterprise and as a joint venturer with the entity Defendants in the telemarketing conduct alleged herein.

17. Defendants Does 1 through 10 are additional natural persons who founded, own, dominate, or direct the Better Enterprise and who authorized, directed, ratified, or personally participated in the unlawful telemarketing alleged herein, including persons who managed the Enterprise's records, dialing, and compliance functions. Their true names and capacities are presently unknown to Plaintiff, who will amend this Complaint to allege their true names and capacities once ascertained.

18. At all relevant times, each Defendant acted as the agent, servant, employee, alter ego, co-venturer, and/or representative of each other Defendant, and acted within the course and scope of that relationship and with the knowledge, authorization, and ratification of each other Defendant.

## THE BETTER ENTERPRISE, ALTER EGO, AND INDIVIDUAL PARTICIPATION

19. The entity Defendants do not operate as genuinely separate businesses. They constitute part of a single, integrated enterprise that holds itself out to the public, collectively, as "the Better Companies."

20. The Better Enterprise comprises not only the entity Defendants but also affiliated entities that share its ownership, control, address, personnel, and infrastructure, including Better Tax Relief, LLC, Better Companies LLC, Lendvia LLC, Better Debt Solutions LLC, Better Lead Generation LLC, MG Motors LLC, INV Better Rise Capital LLC, and Option One Processing LLC, together with the management and holding

entities described below. These affiliated entities and the entity Defendants operate as a single, integrated enterprise, with such unity of interest and ownership that their separate corporate existences are, in reality, indistinguishable.

21. The Better Enterprise is organized as a tiered structure that insulates its principals from its operating companies. The operating entities are controlled through intermediate management entities maintained at the same Irvine address. According to Statements of Information filed with the California Secretary of State under penalty of perjury, RC Mgmt LLC, whose sole member is Defendant Ghanbari, and MN Mgmt LLC, whose sole member is Mohammad Ghafarinia (who on information and belief also uses the name "Matt Nia"), are the managers of the Enterprise's operating entities, including Better Tax Relief, Better Lead Generation LLC, and MG Motors, and, on information and belief, Lendvia and Better Debt Solutions. Each individual Defendant controls a matched pair of management and holding entities at the same Irvine address: according to sworn Statements of Information, Defendant Ghanbari is the sole member of both RC Mgmt LLC and AGW Holdings LLC, and Mr. Ghafarinia is the sole member of both MN Mgmt LLC and MNW Holdings LLC. Through this structure, the individual Defendants own, dominate, and control each of the operating entities, including Defendant Better Rise Capital.

22. On information and belief, Better Lead Generation LLC—a marketing entity controlled by the same management entities and individual Defendants—generates,

sources, and supplies the consumer leads and dialing activity used in the Enterprise's telemarketing.

23. The Better entities and their principals share a common corporate email domain, bettercompanies.com, and a common legal function. The individuals who own and direct the nominally separate entities—including Mr. Ghanbari and Mr. Ghafarinia—use that single domain, and a single General Counsel and a shared legal department act on behalf of all of the entities.

24. The Enterprise's own contractual terms confirm the unity. The Terms of Use for the Enterprise's website state that the website is "owned and operated by" Range View Management LLC, Lendvia LLC, Better Debt Solutions LLC, and Better Tax Relief, LLC, and define the contracting "Companies" to include those entities together with Riseup Financial Group LLC and Better Rise Capital LLC. That a single website, operated by four of the Better entities, expressly binds together Better Rise Capital and the other entities as a common set of "Companies" confirms that the entities operate as one.

25. The entity Defendants further reveal their common control through the coordinated defense of the litigation their telemarketing generates. A single law firm, Phillips Law Corporation, has appeared to defend both Better Debt Solutions and Better Tax Relief in multiple separate actions under the TCPA in federal courts across the country, including in several of the actions identified below. Genuinely independent

companies do not ordinarily retain the same counsel to defend the same course of telemarketing conduct in unrelated districts; the Enterprise's coordinated, common defense reflects its common ownership, control, and operation.

26. The Better entities share a common nerve center. Better Rise Capital, Better Tax Relief, and Better Companies all maintain their principal places of business at a single address—2525 Main Street, Irvine, California—differentiated only by suite number.

27. The Better entities share common ownership, management, and personnel. On information and belief, the same natural persons—including the individual Defendants—own and control each entity, and the same individuals serve in management roles across multiple Better entities.

28. On information and belief, the Better entities were formed as a batch by a common organizer, in close succession and using sequential or near-sequential filing numbers, as components of a single coordinated enterprise rather than as independent businesses. On the same day—July 29, 2023—multiple entities controlled by the same principals, including Better Tax Relief, Better Lead Generation LLC, and MG Motors LLC, simultaneously restated their articles of organization to convert from member-managed to manager-managed and to insert the same two management entities, RC Mgmt LLC and MN Mgmt LLC, as their managers. That a coordinated restructuring on a single day swept in entities across unrelated lines of business—including an automobile

dealership—confirms that RC Mgmt LLC and MN Mgmt LLC are general-purpose control vehicles for the individual Defendants and that the entities they manage are subject to common central control rather than independent operation.

29. On information and belief, the Better entities share a common telephone-dialing platform and a common customer-relationship-management system through which the calls at issue were generated.

30. On information and belief, the Better entities are undercapitalized, commingle funds and resources, disregard corporate formalities, and operate as mere instrumentalities and conduits of one another and of the individual Defendants.

31. That Defendants Ghanbari and Ghafarinia are joint principals of a common enterprise is confirmed by their own sworn filings. In a 2023 Statement of Information for Option One Processing LLC—another entity organized by the same agent at the same Irvine address—Mr. Ghafarinia and Mr. Ghanbari were both listed, under penalty of perjury, as the members of a single entity. The two individuals jointly own and control the entities through which the Enterprise operates.

32. There exists, and at all relevant times existed, such a unity of interest and ownership between and among the entity Defendants and the individual Defendants that the separate personalities of the entities do not in reality exist and are indistinguishable from one another and from the individual Defendants. Adherence to the fiction of the separate existence of the entity Defendants would sanction fraud and promote injustice,

because the individual Defendants use the web of Better entities to insulate themselves from liability for the Enterprise's unlawful telemarketing. Each Defendant is therefore liable as the alter ego of each other Defendant.

33. Independent of alter-ego liability, the individual Defendants are personally liable under the TCPA because they personally authorized, directed, and participated in the violations alleged herein. An individual who directly participates in, authorizes, or directs conduct that violates the TCPA is personally liable for that conduct. Mr. Ghanbari and Mr. Ghafarinia own and direct the Enterprise and personally authorized and directed its telemarketing, and Mr. Ghafarinia is the sole member of Better Rise Capital, the entity that placed the calls to Plaintiff. Each individual Defendant thereby directly participated in and authorized the conduct that violated the TCPA.

## THE TELEPHONE CONSUMER PROTECTION ACT

34. In 1991, Congress enacted the TCPA to curb abusive telemarketing practices that Congress found to be an invasion of privacy and a nuisance.

35. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

36. A person may recover $500 for each violation of § 227(b), or up to $1,500 for each violation committed willfully or knowingly, and may obtain injunctive relief. 47 U.S.C. § 227(b)(3).

37. Under the TCPA, a seller is liable for calls placed on its behalf by third parties under federal common-law principles of agency, including actual authority, apparent authority, and ratification, and an individual who personally participates in, authorizes, or directs the violations is personally liable.

## FACTUAL ALLEGATIONS

### A. The Calls to Plaintiff Joseph James

38. Plaintiff James's telephone number, 516-860-9716, is assigned to a cellular telephone service. Mr. James uses the number for personal, residential purposes, and it is not associated with or held out in connection with any business.

39. Mr. James registered his number on the National Do Not Call Registry on November 9, 2004 and it has remained continuously registered since, more than thirty-one days before the calls alleged herein.

40. Mr. James never provided Defendants—or anyone acting on their behalf—with prior express consent, prior express written consent, or any invitation or permission to call him. He has no established business relationship with Defendants and never inquired about, applied for, or expressed any interest in Defendants' products or services.

41. Beginning on or about December 26, 2025, Defendants caused a barrage of at least forty-five telemarketing calls to be placed to Mr. James's cellular telephone. The calls Mr. James has identified to date include the following:

| No. | Caller ID | Date | Time |
|---|---|---|---|
| 1 | 502-862-9194 | December 26, 2025 | — |
| 2 | 502-482-7261 | March 12, 2026 | — |
| 3 | 502-469-4060 | March 14, 2026 | — |
| 4 | 502-469-9357 | March 16, 2026 | — |
| 5 | 502-358-3407 | March 18, 2026 | — |
| 6 | 502-358-3038 | March 21, 2026 | — |
| 7 | 502-462-6061 | March 22, 2026 | — |
| 8 | 502-453-3415 | March 23, 2026 | — |
| 9 | 502-334-9512 | April 28, 2026 | — |
| 10 | 502-334-9336 | April 29, 2026 | — |
| 11 | 502-862-0560 | May 2, 2026 | — |
| 12 | 502-465-4303 | May 5, 2026 | — |
| 13 | 502-334-6040 | May 6, 2026 | — |
| 14 | 502-469-4066 | May 7, 2026 | — |
| 15 | 502-358-2591 | May 8, 2026 | — |
| 16 | 502-482-7151 | May 9, 2026 | — |
| 17 | 502-462-4037 | May 11, 2026 | — |
| 18 | 502-453-7176 | May 12, 2026 | — |
| 19 | 502-358-3432 | May 13, 2026 | — |
| 20 | 502-334-5628 | May 14, 2026 | — |
| 21 | 502-661-0272 | May 15, 2026 | — |
| 22 | 502-334-7205 | May 18, 2026 | 12:47 p.m. |
| 23 | 502-453-7022 | May 19, 2026 | 11:45 a.m. |
| 24 | 502-469-4340 | May 20, 2026 | 11:09 a.m. |
| 25 | 502-453-6083 | May 21, 2026 | 10:14 a.m. |
| 26 | 502-453-3073 | May 22, 2026 | 10:46 a.m. |
| 27 | 502-462-6317 | May 26, 2026 | 1:10 p.m. |
| 28 | 502-482-4330 | May 27, 2026 | 9:56 a.m. |
| 29 | 502-469-4251 | May 28, 2026 | 11:35 a.m. |
| 30 | 502-462-3021 | May 29, 2026 | 10:15 a.m. |
| 31 | 502-482-6078 | June 2, 2026 | 11:10 a.m. |
| 32 | 502-462-3230 | June 3, 2026 | 10:39 a.m. |
| 33 | 502-390-8546 | June 4, 2026 | 12:33 p.m. |
| 34 | 502-334-9501 | June 5, 2026 | 11:45 a.m. |
| 35 | 502-358-2544 | June 8, 2026 | 11:24 a.m. |
| 36 | 502-480-0341 | June 9, 2026 | 11:34 a.m. |
| 37 | 502-358-2404 | June 10, 2026 | 11:13 a.m. |
| 38 | 502-469-9578 | June 11, 2026 | 1:30 p.m. |
| 39 | 502-482-4213 | June 12, 2026 | 12:41 p.m. |
| 40 | 502-469-9231 | June 15, 2026 | 10:47 a.m. |
| 41 | 502-480-0335 | June 16, 2026 | 10:28 a.m. |

| | | | |
|---|---|---|---|
| 42 | 502-358-3040 | June 17, 2026 | 5:48 p.m. |
| 43 | 502-480-0622 | June 18, 2026 | 12:30 p.m. |
| 44 | 502-453-6508 | June 19, 2026 | 10:36 a.m. |
| 45 | 502-390-9068 | June 20, 2026 | 11:41 a.m. |

42. The calls Mr. James has documented followed the cadence of a sustained commercial dialing campaign. From May 18 through June 20, 2026, Defendants called him on nearly every weekday, skipping only Memorial Day (May 25) and June 1, and also placed a call on Saturday, June 20, each time displaying a different Louisville-area (502) caller identification number. The documented calls clustered in the late-morning and midday hours, with one placed as late as approximately 5:48 p.m. The documented calls extend back to December 26, 2025, and continued at intervals through mid-May 2026 before intensifying into the near-daily weekday cadence described above.

43. The calls delivered artificial or prerecorded voice messages. On June 9, 2026, one of Defendants' calls left a prerecorded voicemail message of approximately forty-six seconds on Mr. James's cellular telephone, marketing business funding and stating in substance that Mr. James's business was pre-approved for approximately $185,000 in funding, with amounts up to approximately $300,000 available. The message's content, tone, pacing, and generic script—delivered to a voicemail box without any interactive human response—demonstrate that it was prerecorded.

44. No two consecutive calls displayed the same caller identification number. Across the calls Mr. James has documented, Defendants transmitted at least forty-five different caller identification numbers, every one in the 502 (Louisville, Kentucky) area

code. Rotating outbound caller identification numbers in this fashion serves no legitimate purpose; its function is to defeat call-blocking and spam-labeling technology and to prevent consumers from screening or blocking the campaign.

45. Defendants' connection to the calls is confirmed by their own follow-up. On June 8, 2026, at 11:24 a.m., Mr. James received one of the campaign's calls. That same afternoon, at 4:31 p.m., a Better Rise Capital sales representative, Chris Sotto, using the email address csotto@betterrisecapital.com, sent Mr. James an email through Defendants' Salesforce account, with the subject line "Better Rise Capital Account Verification Form," displaying Defendants' logo and slogan and urging Mr. James to "finish" an application he had never started. On information and belief, Mr. Sotto is a Better Rise Capital closer who handles consumers contacted through the Enterprise's prerecorded telemarketing, and this email is the Enterprise's standard means of identifying itself to, and converting, the consumers its campaign reaches. A true and correct image of the email is reproduced below:

**From:** noreply@salesforce.com <noreply@salesforce.com> on behalf of Chris Sotto <csotto@betterrisecapital.com>
**Date:** Monday, June 8, 2026 at 4:31 PM
**To:** jjames@mehc.cc <jjames@mehc.cc>
**Subject:** Better Rise Capital Account Verification Form

BETTER RISE CAPITAL
BUSINESS FUNDING DONE BETTER




46. The only plausible source of Mr. James's contact information in Defendants' Salesforce database, and the only plausible trigger for a same-day "finish your application" follow-up email, was the telemarketing campaign directed at Mr. James.

**B. Harm to Plaintiff and the Class**

47. Defendants' calls harmed Plaintiff and the Class members by invading their privacy, intruding upon their seclusion, and disturbing the use and enjoyment of their telephones, and by wasting their time, occupying their telephone lines, interrupting them in the midst of their activities, and consuming their devices' battery and storage, including storage occupied by Defendants' prerecorded voicemails. These are precisely the harms Congress enacted the TCPA to prevent.

48. Defendants placed the calls alleged herein with knowledge that their conduct was unlawful. The Better Enterprise and its constituent entities have been named as defendants in more than twenty-five federal actions under the Telephone Consumer

Protection Act arising from the same prerecorded-voice and lead-generation practices at issue here—litigation that has named not only the operating entities but also the Enterprise's management entities and the individual Defendants together. In *Rutila v. Range View Management LLC*, No. 2:25-cv-10839 (E.D. Mich.), the plaintiff named Range View Management LLC—styled on the docket as doing business as Lendvia LLC—together with Lendvia LLC, Better Debt Solutions LLC, MN Mgmt LLC, RC Mgmt LLC, and both Mr. Ghafarinia and Mr. Ghanbari as defendants in a single TCPA action. Better Rise Capital is the defendant in a parallel prerecorded-voice class action pending in this District, *Charles v. Better Rise Capital LLC*, No. 8:26-cv-01525 (C.D. Cal.). And one or more of the Enterprise's entities have been named as defendants in, among many others, *Janzen v. Better Debt Solutions LLC*, No. 8:24-cv-01516 (C.D. Cal.); *Lowry v. Better Debt Solutions, LLC*, No. 8:25-cv-00180 (C.D. Cal.); *Stirewalt v. Range View Management LLC*, No. 1:24-cv-00180 (M.D.N.C.); *Aurandt v. Range View Management LLC*, No. 3:25-cv-05785 (W.D. Wash.); *Pinn v. Better Tax Relief LLC*, No. 4:24-cv-00488 (N.D. Tex.); *Kesterson v. Better Rise Capital LLC*, No. 5:25-cv-01095 (W.D. Tex.); and *Wilsman v. Better Rise Capital LLC*, No. 6:25-cv-01857 (M.D. Fla.). Despite this repeated notice that its telemarketing was alleged to violate the TCPA, the Enterprise did not stop; it continued the calling campaign that reached Plaintiff.

## CLASS ACTION ALLEGATIONS

49. Plaintiff brings this action individually and on behalf of the following Class pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3).

50. Prerecorded Voice Class. All persons in the United States who, from four years prior to the filing of this action through the date of class certification, received one or more telephone calls made by or on behalf of Defendants to their cellular telephone number that delivered an artificial or prerecorded voice message.

51. Excluded from the Class are Defendants; their officers, directors, members, employees, agents, subsidiaries, and affiliates; any entity in which a Defendant has a controlling interest; the judicial officers to whom this case is assigned and their staff and immediate families; and counsel of record and their employees and immediate families.

52. Numerosity. The members of the Class are so numerous that joinder of all members is impracticable. Defendants' campaign bears every hallmark of high-volume automated dialing—prerecorded messages, a fixed daily dialing schedule, and a rotating pool of outbound caller identification numbers maintained to evade call blocking. On information and belief, Defendants placed prerecorded calls to thousands of telephone numbers. The precise number of members can be ascertained from Defendants' records and those of their dialing platform, carriers, and lead-generation affiliates.

53. Ascertainability. The Class is defined by objective criteria and its members can be identified through Defendants' call records, lead files, customer-relationship-

management data, dialing-platform records, and carrier records, together with the National Do Not Call Registry.

54. Commonality and Predominance. Common questions of law and fact exist as to all members and predominate over any individual questions, including: (a) whether Defendants or their agents placed calls using an artificial or prerecorded voice; (b) whether Defendants placed, or are vicariously liable for, the calls; (c) whether the Better entities operate as a single enterprise and as alter egos of one another and of the individual Defendants, and whether the individual Defendants personally participated in the violations; (d) whether Defendants obtained prior express consent; (e) whether Defendants' violations were willful or knowing; and (f) the relief to which Plaintiff and the members are entitled.

55. Typicality. Plaintiff's claims are typical of the Class members' claims. Plaintiff and all Class members were subjected to the same calling campaign, conducted in the same manner by the same enterprise, in violation of the same statutory provisions, and sustained the same statutory injuries.

56. Adequacy. Plaintiff will fairly and adequately represent and protect the interests of the Class. His interests are aligned with, and not antagonistic to, those of the other Class members, and Plaintiff has retained counsel competent and experienced in class action and TCPA litigation.

57. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The statutory damages available to each individual Class member are small relative to the burden and expense of individual litigation against a represented enterprise, making it impracticable for Class members to seek individual redress. Individual actions would risk inconsistent adjudications and burden the courts with duplicative proceedings. No unusual difficulties are likely in managing this action as a class action, as the claims arise from a uniform calling campaign and turn on common evidence from Defendants' own records.

58. Defendants have acted and refused to act on grounds generally applicable to Plaintiff and the Class by conducting a uniform telemarketing campaign, making final injunctive relief appropriate with respect to the Class as a whole under Rule 23(b)(2).

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227(b)(1)(A)(iii)**
**(Artificial or Prerecorded Voice Calls to a Cellular Telephone)**
**(On Behalf of Plaintiff and the Prerecorded Voice Class)**

59. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

60. Defendants initiated, or caused their agents to initiate, telephone calls to the cellular telephone numbers of Plaintiff and the Prerecorded Voice Class members using an artificial or prerecorded voice.

61. The calls were not made for emergency purposes.

62. Neither Plaintiff nor the Prerecorded Voice Class members provided prior express consent—let alone prior express written consent for telemarketing—to receive the calls.

63. Defendants thereby violated 47 U.S.C. § 227(b)(1)(A)(iii) with each such call. Each entity Defendant is liable as a direct participant, as a principal for calls placed on its behalf, and as the alter ego of each other Defendant; and each individual Defendant is liable for having personally authorized, directed, and participated in the calls.

64. Plaintiff and each Prerecorded Voice Class member are entitled to $500 in statutory damages for each violation under 47 U.S.C. § 227(b)(3)(B).

65. Defendants' violations were knowing and willful, including because Defendants rotated caller identification numbers to evade blocking, called on nearly every weekday for more than a month, and called numbers on the National Do Not Call Registry without consent, and because Defendants and their affiliated entities had repeatedly been named as defendants in more than twenty-five federal actions under the TCPA arising from the same practices, as alleged above, yet continued the campaign notwithstanding that notice. Defendants' knowledge is further reflected in the Enterprise's practice, when confronted with liability for its calls, of generating after-the-fact electronic "consent" or lead-verification certificates purporting to show consumer assent that did not occur, and asserting them to claim consent and to compel arbitration—a practice that presupposes Defendants' awareness that the underlying calls were placed

without the consent the TCPA requires. The Court should treble the statutory damages to $1,500 per call under 47 U.S.C. § 227(b)(3), and should enjoin future violations under 47 U.S.C. § 227(b)(3)(A).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that the Court enter judgment in his favor and against Defendants, jointly and severally, as follows:

A. An order certifying the Class under Federal Rule of Civil Procedure 23, appointing Plaintiff as class representative, and appointing Plaintiff's counsel as class counsel;

B. Statutory damages of $500 for each violation of 47 U.S.C. § 227(b), trebled to $1,500 per violation for Defendants' knowing and willful conduct, awarded to Plaintiff and each Prerecorded Voice Class member;

C. An injunction prohibiting Defendants and their agents from placing artificial or prerecorded voice calls to cellular telephones without prior express consent;

D. Pre-judgment and post-judgment interest as permitted by law;

E. Costs of suit; and

F. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the Class, demands a trial by jury on all issues so triable.

Dated: September 23, 2026

Respectfully submitted,

/s/ Mark L. Javitch

Mark L. Javitch (CA SBN 323729)
JAVITCH LAW OFFICE
3 East 3rd Ave., Suite 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 300-0343
mark@javitchlawoffice.com

*Attorney for Plaintiff Joseph James and the Putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2026, I electronically filed the foregoing Second Amended Class Action Complaint with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Mark L. Javitch
Mark L. Javitch