Mario Iskander, SBN #327025
ISKANDER LAW
1111 N. Brand Blvd., Suite 308
Glendale, California 91202
Tel. (240) 439-1970
Email: mario@iskanderlaw.com

Attorneys for Defendants *Arsalan Ghanbari, Mohammad Ghafarinia a/k/a Matt Nia, Better Rise Capital LLC, and Range View Management LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSEPH JAMES, individually, and on behalf of all similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ARSALAN GHANBARI; MOHAMMAD GHAFARINIA a/k/a MATT NIA; BETTER RISE CAPITAL LLC; RANGE VIEW MANAGEMENT LLC; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 8:26-cv-01489-FWS-BFM<br><br>**DEFENDANTS ARSALAN GHANBARI, MOHAMMAD GHAFARINIA, AND RANGE VIEW MANAGEMENT LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT [FED. R. CIV. P. 12(b)(6)]; ALL DEFENDANTS' MOTION TO STRIKE [FED. R. CIV. P. 12(f)]; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: November 5, 2026<br>Time: 10:00 a.m.<br>Ctrm: 10D<br>Judge: Hon. Fred W. Slaughter<br><br>SAC Filed: September 23, 2026 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 5, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 10D of the Ronald Reagan Federal Building and United

States Courthouse, 411 West Fourth Street, Santa Ana, California 92701, before the Honorable Fred W. Slaughter, Defendants Arsalan Ghanbari, Mohammad Ghafarinia a/k/a Matt Nia, Range View Management LLC, and Better Rise Capital LLC (collectively, "Defendants") will and hereby do move as follows with respect to the Second Amended Class Action Complaint ("SAC"), ECF 31:

1. **Motion to Dismiss (Fed. R. Civ. P. 12(b)(6)). Defendants Arsalan Ghanbari, Mohammad Ghafarinia, and Range View Management LLC** (the "*Moving Defendants*") move to dismiss the SAC's sole claim for relief, under 47 U.S.C. § 227(b)(1)(A)(iii), as against them, without further leave to amend. The grounds are that the SAC: (a) pleads no specific act by Mr. Ghanbari or Mr. Ghafarinia in the making or initiation of any call, and personal liability under § 227(b) must rest on specific acts rather than ownership or office; (b) alleges no call placed, initiated, or directed by Range View Management LLC and no facts establishing an agency relationship between Range View and any caller; (c) pleads alter-ego, "single enterprise," and joint-venture theories by label, without facts establishing unity of interest or an inequitable result, and pleads facts negating unity of interest as to Range View; (d) pleads the Defendants collectively as "the Better Enterprise" without specifying which Defendant is responsible for which acts; and (e) was filed after the Court granted leave to amend "to address the deficiencies identified in Defendants' motion to dismiss," ECF 30 ¶ 2, and does not cure them.

2. **Motion to Strike (Fed. R. Civ. P. 12(f)). All Defendants** move to strike, as immaterial and impertinent, the portion of paragraph 65 of the SAC beginning with the words "Defendants' knowledge is further reflected in the Enterprise's practice" and ending with the words "without the consent the TCPA requires." Better Rise Capital LLC joins only the Motion to Strike and does not move to dismiss. Under Rule 12(a)(4), each Defendant will serve its responsive pleading, if any is required, within fourteen days after notice of the Court's ruling.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on September 25, 2026. It is based on this Notice, the following Memorandum of Points and Authorities, the SAC, the pleadings and papers on file, and any argument the Court may entertain.

Dated: October 7, 2026

ISKANDER LAW

By: ______________________________

Mario Iskander
Attorneys for Defendants

## TABLE OF CONTENTS

I. INTRODUCTION .......... 8
II. BACKGROUND .......... 9
A. Procedural History. .......... 9
B. What the SAC Alleges as to Each Moving Defendant. .......... 9
III. LEGAL STANDARDS .......... 11
IV. ARGUMENT .......... 11
A. The SAC States No Claim Against Mr. Ghanbari or Mr. Ghafarinia. .......... 11
1. Personal liability requires specific acts, not ownership or office. .......... 11
2. The SAC deleted the specific conduct and now pleads a recital. .......... 12
3. Sole membership of the calling entity is still status. .......... 14
4. Ownership through management and holding companies is at least two steps removed from the calls. .......... 15
5. Filings with the Secretary of State and other lawsuits are not participation. .......... 16
B. The SAC States No Claim Against Range View. .......... 16
1. Range View is not alleged to have made or initiated any call. .......... 16
2. No agency relationship is pleaded. .......... 17
C. Alter Ego, "Single Enterprise," and Joint Venture Do Not Supply the Missing Facts. 18
1. The unity-of-interest allegations describe an ordinary corporate family. .......... 19
2. The SAC pleads no inequitable result. .......... 20
3. As to Range View, the SAC pleads the theory out. .......... 21
4. "Single enterprise" and joint venture are labels. .......... 21
D. The Collective Pleading Independently Fails Rule 8. .......... 22
E. Dismissal Should Be Without Further Leave to Amend. .......... 22
F. The Court Should Strike the Fabricated-Consent Passage of Paragraph 65 .......... 24
V. CONCLUSION .......... 25

## TABLE OF AUTHORITIES

**Cases**

*Abante Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 WL 288055 (N.D. Cal. Jan. 4, 2018) ............ 18

*AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631 (9th Cir. 2012) ............ 22

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ............ 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............ 11, 12, 17, 18

*Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035 (9th Cir. 2018) ............ 23

*Barton v. Real Innovation Inc.*, 2025 WL 5264994 (W.D. Wash. Nov. 24, 2025) ............ 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............ 11

*Black v. USHealth Advisors, LLC*, 2026 WL 2825908 (N.D. Ala. Sept. 21, 2026) ............ 20

*Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917 (9th Cir. 2013) ............ 12, 23

*Blizzard Energy, Inc. v. Schaefers*, 71 Cal. App. 5th 832 (2021) ............ 18

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) ............ 17

*City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154 (3d Cir. 2018) ............ 12

*Crews v. Blackrock Debt Relief Corp.*, 2025 WL 2107627 (D. Ariz. July 28, 2025) ............ 13

*Crews v. Sun Sols. AZ LLC*, 2024 WL 2923709 (D. Ariz. June 10, 2024) ............ 14

*Cunningham v. Capital Advance Sols., LLC*, 2018 WL 6061405 (D.N.J. Nov. 20, 2018) ............ 14

*Declements v. Americana Holdings LLC*, 2020 WL 4220075 (D. Ariz. July 23, 2020) ............ 13

*Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011) ............ 11, 22

*Fantasy, Inc. v. Fogerty*, 984 F.2d 1524 (9th Cir. 1993) ............ 24

*Fleites v. MindGeek S.A.R.L.*, 801 F. Supp. 3d 1045 (C.D. Cal. 2025) ............ 20, 21, 22

*Frances T. v. Village Green Owners Ass'n*, 42 Cal. 3d 490 (1986) ............ 11

*Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104 (C.D. Cal. 2015) ............ 19, 20

*Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014) ............ 15, 17

*Hamilton v. El Moussa*, 2020 WL 2614625 (C.D. Cal. Feb. 10, 2020) ............ 13, 18, 22

*Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068 (9th Cir. 2019)........................ 17

*Holtz v. United Plumbing & Heating Co.*, 49 Cal. 2d 501 (1957).......................................... 18

*In re Boon Global Ltd.*, 923 F.3d 643 (9th Cir. 2019)........................................................... 20

*In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033 (S.D. Cal. 2017) . 18, 21

*Int'l Petroleum Prods. & Additives Co. v. Black Gold S.A.R.L.*, 115 F.4th 1202 (9th Cir. 2024)........................................................................................................... 18

*Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443 (9th Cir. 2018).......................................... 17

*Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143 (9th Cir. 2004)............ 19

*Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010 (9th Cir. 2018)........................ 12, 17

*Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220 (1991)................... 22

*Meyer v. Holley*, 537 U.S. 280 (2003)............................................................... 14, 15, 17

*Milkcrate Athletics, Inc. v. Adidas Am., Inc.*, 619 F. Supp. 3d 1009 (C.D. Cal. 2022)........... 23

*Mora v. Zeta Interactive Corp.*, 2016 WL 3477222 (E.D. Cal. June 27, 2016)...................... 13

*Ott v. Mortg. Invs. Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046 (D. Or. 2014)..................... 11, 13

*Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959 (9th Cir. 2014).............................................. 24

*Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015)................................................................ 19

*Riot Games, Inc. v. Suga PTE, Ltd.*, 638 F. Supp. 3d 1102 (C.D. Cal. 2022)........................ 19

*Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523 (2000)............................... 20

*Soo Park v. Thompson*, 851 F.3d 910 (9th Cir. 2017)............................................................. 12

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125 (C.D. Cal. 2011).......................................................................................................... 23

*Thomas v. Taco Bell Corp.*, 582 F. App'x 678 (9th Cir. 2014)......................................... 16, 17

*Toho-Towa Co. v. Morgan Creek Prods., Inc.*, 217 Cal. App. 4th 1096 (2013)..................... 21

*Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001 (9th Cir. 1985)............. 11, 12

*Tuso v. Nat'l Health Agents, LLC*, 2021 WL 2534220 (E.D. Cal. June 21, 2021) 17, 19, 20, 22

*United States v. Bestfoods*, 524 U.S. 51 (1998)...................................................................... 15

*United States v. Reis*, 366 F. App'x 781 (9th Cir. 2010)......................................................... 11

*Velicer v. Falconhead Capital, LLC*, 2020 WL 1182962 (W.D. Wash. Mar. 11, 2020)......... 15

*Wells Fargo Bank, N.A. v. Stewart Homes, Inc.*, 732 F. Supp. 3d 1169 (C.D. Cal. 2024) .......... 20

*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010) .......... 11, 24, 25

*Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017).......... 18

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) .......... 22

**Statutes and Rules**

Cal. Corp. Code § 17703.04.......... 15

47 U.S.C. § 227(b) .......... 9, 16

Fed. R. Civ. P. 8 .......... 22

Fed. R. Civ. P. 12(b)(6).......... 11, 13, 14

Fed. R. Civ. P. 12(f).......... 11, 24, 25

C.D. Cal. L.R. 7-12 .......... 23

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This is Plaintiff's third complaint attempting to plead a claim against two individuals and an entity that did not call him. The First Amended Complaint ("FAC") was dismissed as to Mr. James with leave "to address the deficiencies identified in Defendants' motion to dismiss." ECF 30 ¶ 2. That motion, (ECF 18), identified the deficiencies precisely: pleading personal liability against officers, employees and agents of an entity requires specific acts be alleged--not merely the office which such individual held. A non-calling entity is liable only through pleaded agency facts. Alter ego requires facts on both prongs. Pleading such facts requires allegations specific to each defendant. Collective "Enterprise" pleading does not give each Defendant notice of what he/she/ it did.

Plaintiff did not oppose that motion. The SAC answers none of its points. It narrows the case to four Defendants and one claim, and it attributes the calls to one entity, Better Rise Capital LLC ("BRC"), through a named BRC sales representative's same-day email. SAC ¶ 45. BRC does not move to dismiss. As to everyone else, the SAC adds nothing. Its allegations about the Moving Defendants — the Secretary of State filings, the same-day restructuring of three non-parties, the law firm that has defended affiliates elsewhere, and the list of other lawsuits — are the FAC's allegations, re-pleaded word for word. Compare FAC ¶¶ 15–16, 18, 22, 27–38, 67 with SAC ¶¶ 13–16, 21–32, 48. What the SAC changes, it deletes: the particular conduct the FAC attributed to the individuals is gone, and personal participation is now pleaded only by conclusion. SAC ¶¶ 5, 13, 14, 33, 63. And as to Range View the SAC still pleads the fact that defeats its own theory: Range View's "sole manager and member is Payam Sadeghi," a non-party who owns nothing else in the case. SAC ¶ 16.

Separately, all Defendants move to strike one passage that has nothing to do with the calls to Mr. James: an accusation, carried over from the claims the Court compelled to arbitration, that Defendants fabricate consent records — although Plaintiff does not allege that any consent record was ever created for him or asserted against him. SAC ¶ 65.

## II. BACKGROUND

### A. Procedural History.

Plaintiffs Joseph James and Brian McBride filed the FAC on July 6, 2026 against eight Defendants. ECF 10. Defendants moved to compel Mr. McBride's claims to arbitration and to dismiss. ECF 18, 21. Plaintiffs did not oppose either motion, and the Court granted both. ECF 25. In its Amended Order, the Court compelled Mr. McBride's claims to arbitration and dismissed the FAC as to Mr. James, granting leave "to amend the dismissed claims to address the deficiencies identified in Defendants' motion to dismiss." ECF 30 ¶¶ 1–2. Mr. James filed the SAC on September 23, 2026. ECF 31. It names four of the original eight Defendants and asserts a single claim under 47 U.S.C. § 227(b)(1)(A)(iii) on behalf of a putative nationwide "Prerecorded Voice Class." SAC ¶¶ 50, 59–65.

### B. What the SAC Alleges as to Each Moving Defendant.

**The calls.** Mr. James alleges at least forty-five calls between December 26, 2025 and June 20, 2026 from rotating 502-area-code numbers. SAC ¶¶ 41–44. He attributes them to BRC: on June 8, 2026, a BRC sales representative, identified by name and email address, sent him a "Better Rise Capital Account Verification Form" email the afternoon after one of the calls. SAC ¶¶ 45–46. The SAC elsewhere describes BRC as "the entity that placed the telemarketing calls to Plaintiff James." SAC ¶ 14.

**Mr. Ghanbari.** Mr. Ghanbari is alleged to be the sole member of RC Mgmt LLC and AGW Holdings LLC, "a management entity and a holding entity through which the Enterprise's operating companies are controlled," and, on information and belief, to co-own and control the Enterprise, to be a person who "personally directs and authorizes the Enterprise's telemarketing, and personally manages the Enterprise's response to consumer complaints and litigation arising from its calls." SAC ¶ 13. No filing or fact is alleged making him a member, manager, or officer of BRC or Range View; the SAC offers only the information-and-belief generality that the individuals "own and control each entity." SAC ¶ 27. The SAC's only link between him and BRC is the structural conclusion that, "[t]hrough this structure, the individual Defendants own, dominate, and control

each of the operating entities, including Defendant Better Rise Capital." SAC ¶ 21; see also SAC ¶¶ 13, 27, 31 (same, in general terms). The same paragraph does not name BRC among the operating entities that RC Mgmt LLC and MN Mgmt LLC are alleged to manage, *id.*, and the SAC identifies Mr. Ghafarinia as BRC's sole member. SAC ¶¶ 14, 33.

**Mr. Ghafarinia.** Mr. Ghafarinia is alleged to be the sole member of MN Mgmt LLC, MNW Holdings LLC, Better Companies LLC, and BRC, and, on information and belief, to be "a co-founder and principal of the Better Enterprise" who "personally directs and authorizes its telemarketing." SAC ¶ 14. Both men are alleged to have been listed as members of a non-party, Option One Processing LLC, in a 2023 Statement of Information. SAC ¶ 31.

**Personal participation.** Paragraph 33 is the SAC's only paragraph devoted to personal participation. It states that each individual "personally authorized, directed, and participated in the violations," that both "own and direct the Enterprise and personally authorized and directed its telemarketing," and that Mr. Ghafarinia is the sole member of BRC. SAC ¶ 33. The FAC's allegation that Mr. Ghafarinia "personally directed that complaints arising from the Enterprise's calls be addressed immediately" has been deleted. *Compare* FAC ¶ 40 *with* SAC ¶ 33.

**Range View.** Range View is a Wyoming limited liability company whose "sole manager and member is Payam Sadeghi." SAC ¶ 16. The SAC alleges that Range View operates a website whose Terms of Use name it and three non-parties as owners and operators; that defense counsel in another action described it as "Range View Management d/b/a Lendvia"; and that it joined a motion to consolidate other TCPA actions. *Id.* The SAC does not allege that Range View placed, initiated, directed, or paid for any call to Mr. James, or any fact, as opposed to the labels of ¶¶ 16 and 18, showing a relationship between Range View and the entity that did.

**Absent as to all three:** any allegation that the Moving Defendant placed a call to Mr. James, selected or supplied dialing equipment, drafted or approved a script or prerecorded message, retained, paid, or instructed a vendor, chose which numbers were dialed, or received and disregarded a complaint about the calls.

## III. LEGAL STANDARDS

To survive a Rule 12(b)(6) motion, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Where multiple defendants are sued, the complaint must give each defendant fair notice of what it is alleged to have done. *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011).

Under Rule 12(f), the Court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of the rule is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal quotation marks and citation omitted).

## IV. ARGUMENT

### A. The SAC States No Claim Against Mr. Ghanbari or Mr. Ghafarinia.

#### 1. Personal liability requires specific acts, not ownership or office.

A corporate "officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985) (citation omitted). The rule reaches conduct, not position: such liability must be "founded upon specific acts by the individual director or officer." *United States v. Reis*, 366 F. App'x 781, 782 (9th Cir. 2010); *accord Ott v. Mortg. Invs. Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1060 (D. Or. 2014) (applying the principle to TCPA claims). California law is the same: directors and officers "cannot be held vicariously liable for the corporation's torts in which they do not participate," and "[t]heir liability, if any, stems from their own tortious conduct, not from their status as directors or officers of the enterprise." *Frances T. v. Village Green Owners Ass'n*, 42 Cal. 3d 490, 503 (1986). The standard is not a low one. The Third Circuit has expressed "doubts as to the existence of either a statutory or common-law basis" for the personal liability of

the officer before it, and, assuming such liability exists, requires that the individual not be "merely tangentially involved": he must have "actually committed the conduct that violated the TCPA, and/or [he] actively oversaw and directed this conduct." *City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 161–62 (3d Cir. 2018) (internal quotation marks and citations omitted). The SAC fails even that standard, because it pleads the conclusion and not the facts that would satisfy it.

**2. The SAC deleted the specific conduct and now pleads a recital.**

Moving parties' prior motion to dismiss, ECF 18, showed that the FAC's only particular allegations about the individuals described post-call conduct: responding to complaints and suppressing a number. ECF 18 at § IV.A.2. The SAC's response was not to add facts about the calls, but to delete the specific allegations and retain, as to Mr. Ghanbari only, a generic statement on information and belief that he "personally manages the Enterprise's response to consumer complaints and litigation arising from its calls." SAC ¶ 13. That is still post-call conduct, and managing the response to a complaint is not making a call. ECF 18 at § IV.A.2. Nor does it plead ratification. An act is ratifiable only "if the actor acted or purported to act as an agent on the person's behalf," *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (quoting Restatement (Third) of Agency § 4.03), and the SAC alleges that BRC placed the calls to market BRC's own business-funding product, SAC ¶¶ 14–15, 43, 45 — not that it acted as Mr. Ghanbari's agent. What remains is status — sole membership of management, holding, and operating LLCs, SAC ¶¶ 13–14, 21, 31 — and paragraph 33's statement that each individual "personally authorized, directed, and participated in the violations." That sentence restates the *Transgo* standard as a fact. It is precisely the "[t]hreadbare recital[]" that *Iqbal* disregards. 556 U.S. at 678. Pleading the same words "on information and belief," as ¶ 13 does, changes nothing. The Ninth Circuit affirmed dismissal of claims against a senior official where "[t]he only allegations that mention [him] are that, 'on information and belief,' he 'direct[ed]' the other defendants to take the actions that form the basis of the complaint," because "no factual assertions support this allegation, and the conclusory allegations are insufficient on their own to defeat a motion to dismiss." *Blantz v. Cal.*

*Dep't of Corr. & Rehab.*, 727 F.3d 917, 926–27 (9th Cir. 2013). *Soo Park v. Thompson* is not to the contrary. It permits information-and-belief pleading "where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible," and it sustained the claim there "in light of the additional facts alleged by Park." 851 F.3d 910, 928–29 (9th Cir. 2017) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). It does not permit a plaintiff to plead the elements on belief alone — least of all a plaintiff who pleaded specifics about the individuals in the FAC and deleted them after ECF 18. The SAC offers no such facts. Its information-and-belief allegations about Mr. Ghanbari (¶ 13) and about a shared dialing affiliate and platform (¶¶ 22, 29) rest on nothing but the Secretary of State filings. In *Hamilton v. El Moussa*, the court granted the individual defendants' Rule 12(b)(6) motion where the complaint alleged that each defendant was the agent and "joint venturer[]" of the others and that every act was committed with the "authorization and consent of each defendant," holding that allegation "a quintessential example of 'unadorned labels.'" No. CV 19-8182-CJC(AFMx), 2020 WL 2614625, at *2 (C.D. Cal. Feb. 10, 2020). The court also rejected the argument that the individuals' role would be "substantiated through discovery": a plaintiff "may not rely solely on the speculative promises of discovery to survive a motion to dismiss." *Id.* at *4 (citation omitted).

Courts reject individual TCPA claims resting on an owner's or manager's status. *Crews v. Blackrock Debt Relief Corp.*, No. CV-25-00025-PHX-JAT, 2025 WL 2107627, at *3 (D. Ariz. July 28, 2025) (default-judgment posture; dismissing claim against individual whose alleged liability rested on his status as "owner and manager," because "it is not enough to allege that [he] generally participated in the operations" of the company); *Declements v. Americana Holdings LLC*, No. CV-20-00166-PHX-DLR, 2020 WL 4220075, at *1 & n.3 (D. Ariz. July 23, 2020) (dismissing CEO without leave where allegations that he directed, authorized, and ratified the calls were unsupported by facts). The decisions sustaining individual claims show what is missing. In *Mora v. Zeta Interactive Corp.*, the court denied dismissal where the CEO was alleged, on information and belief, to have been "intimately involved in the program to make these calls, including the selection of the

calling equipment." 2016 WL 3477222, at *1, *3 (E.D. Cal. June 27, 2016). In *Ott*, the individuals were alleged to have designed the telemarketing operation, turned off its do-not-call lists, and received and ignored requests that the calls stop. 65 F. Supp. 3d at 1061. The SAC alleges no equipment, no script, no vendor, no target list, no system, and no disregarded complaint.

**3. Sole membership of the calling entity is still status.**

The only change the SAC makes to its personal-participation paragraph is to add that Mr. Ghafarinia is the sole member of BRC. SAC ¶ 33. That is not new — the FAC pleaded it, FAC ¶¶ 16, 18; SAC ¶¶ 14–15 — and it is an allegation about who owns BRC, not about what Mr. Ghafarinia did. Courts in this Circuit have found more detailed allegations insufficient. In *Crews v. Sun Solutions AZ LLC*, the complaint alleged that the individual defendant "personally participated . . . by personally directing and authorizing the scripting and selecting of calls to be made" and by "orchestrating the calling strategy, including by choosing to use pre-recorded calls." No. CV-23-01589-PHX-DWL, 2024 WL 2923709, at *7 (D. Ariz. June 10, 2024). Assessing the sufficiency of the complaint on a motion for default judgment, the court held that allegation "conclusory and unsupported by specific facts," and declined to hold him personally liable. *Id.* Courts ruling under Rule 12(b)(6) reach the same result: allegations that individual defendants "authorized," "oversaw" and "directed" the calls "based solely upon their status as corporate officials" do not state a claim. *Cunningham v. Capital Advance Sols., LLC*, No. 17-13050 (FLW), 2018 WL 6061405, at *5 (D.N.J. Nov. 20, 2018). Where courts have found an owner's liability adequately pleaded, the complaint alleged what he did — for example, that he "provided his call center with phone numbers to call and scripts to use in the calls," "instructed his call center to ignore do-not-call requests," and "told his call center to continue calling." *Barton v. Real Innovation Inc.*, No. 3:24-cv-05194-DGE, 2025 WL 5264994, at *4 (W.D. Wash. Nov. 24, 2025) (default judgment) (internal quotation marks omitted). The Supreme Court rejected the same theory under a comparable federal statute. In *Meyer v. Holley*, 537 U.S. 280 (2003), the Ninth Circuit had held the president and sole shareholder of a real estate company personally liable for a salesman's Fair Housing Act violation because he had the "authority to control" the salesman's conduct. *Id.* at 283–

84. The Supreme Court vacated that judgment: "in the absence of special circumstances it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability," and "[a] corporate employee typically acts on behalf of the corporation, not its owner or officer." *Id.* at 286. The TCPA incorporates those same "ordinary" vicarious-liability rules. *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877 (9th Cir. 2014) (quoting *Meyer*, 537 U.S. at 285), *aff'd*, 577 U.S. 153 (2016). BRC's sales representative acted for BRC, SAC ¶ 45; being BRC's sole member does not make Mr. Ghafarinia the principal of BRC's callers. California's limited liability company statute says the same thing: an LLC's liabilities, "whether arising in contract, tort, or otherwise," "do not become the debts, obligations, or other liabilities of a member or manager solely by reason of the member acting as a member or manager acting as a manager," and, alter ego aside, a member's personal exposure turns on "the member's participation in tortious conduct." Cal. Corp. Code § 17703.04(a)(2), (b), (c).

**4. Ownership through management and holding companies is at least two steps removed from the calls.**

The SAC's theory as to Mr. Ghanbari is structural: he is the sole member of RC Mgmt LLC and AGW Holdings LLC, those entities manage or hold operating companies, and "[t]hrough this structure" the individuals "own, dominate, and control" the operating companies, including BRC. SAC ¶¶ 13, 21. That theory runs against a principle "deeply 'ingrained in our economic and legal systems'": one who controls a company through ownership of its stock "is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation omitted). The "exercise of the 'control' which stock ownership gives" — electing directors, adopting bylaws, and the other "acts incident to the legal status of stockholders" — does not create liability, "[n]or will a duplication of some or all of the directors or executive officers be fatal." *Id.* at 61–62 (citation omitted). Apart from veil piercing, an owner answers for a subsidiary's wrong only where it "is directly a participant in the wrong complained of." *Id.* at 62–64 (citation omitted).

Courts apply these principles to dismiss claims against owners who sit above the operating company. In *Velicer v. Falconhead Capital, LLC*, the defendant held a majority interest in a holding

company that was the corporate parent of the company that dealt with the plaintiffs. The court held that relationship "one-step too far removed" to support control-person liability under Washington's franchise statute, and that, on the tort claims against the indirect parent, the plaintiffs "must plead facts sufficient to pierce two layers of corporate veil" before liability "could be plausibly imposed." No. C19-1505JLR, 2020 WL 1182962, at *8–9 (W.D. Wash. Mar. 11, 2020) (dismissing with leave to amend). The SAC's structure as to Mr. Ghanbari is more attenuated still. It does not allege that RC Mgmt LLC or AGW Holdings LLC is a member or manager of BRC, holds an interest in it, or has any dealings with it; the operating companies RC Mgmt LLC is alleged to manage are others. SAC ¶ 21. Mr. Ghanbari is therefore at least two corporate steps removed from the caller, and the SAC pleads no fact bridging either step.

**5. Filings with the Secretary of State and other lawsuits are not participation.**

The remaining allegations about the individuals concern corporate paperwork: the membership of management and holding companies (¶¶ 13–14, 21), a same-day restatement of articles by three non-parties in 2023 (¶ 28), and a 2023 Statement of Information for a non-party (¶ 31). None concerns a telephone call. The allegations that a non-party affiliate "controlled by the same management entities and individual Defendants" supplies "the consumer leads and dialing activity," and that the Better entities share a dialing platform, SAC ¶¶ 22, 29, are made on information and belief about entities collectively; they do not say what either individual did. Nor does it matter that both men were named as defendants in another action. SAC ¶ 48. An allegation in someone else's complaint is not a fact pleaded here, and being sued is not participating in a violation.

**B. The SAC States No Claim Against Range View.**

**1. Range View is not alleged to have made or initiated any call.**

Section 227(b)(1)(A) makes it unlawful "to make any call" using an artificial or prerecorded voice. Direct liability attaches to the person who makes or initiates the call. *See Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014) (agreeing that "[d]irect liability is inapplicable"

where the defendant was not "the actual sender" of the message (citation omitted)). A defendant that did not place a call is reachable, if at all, through "ordinary tort-related vicarious liability rules." *Gomez*, 768 F.3d at 877 (quoting *Meyer*, 537 U.S. at 285). The SAC attributes the calls to BRC. SAC ¶¶ 14, 45. It alleges no step by Range View toward placing any call: no dialing, no selection of recipients, no timing, no script.

**2. No agency relationship is pleaded.**

Vicarious TCPA liability is governed by federal common-law agency principles. *Meyer*, 537 U.S. at 285–87; *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016). Agency requires a manifestation by the principal that the agent act on its behalf and subject to its control, and the agent's assent. *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019). A commercial relationship that does not rise to control over the manner and means of the calling does not support vicarious liability, *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449–53 (9th Cir. 2018) (summary judgment), and a plaintiff must plead facts making each link in that chain plausible, *Iqbal*, 556 U.S. at 678. Ratification presupposes an act by an actual or purported agent that the principal knowingly adopts. *Kristensen*, 879 F.3d at 1014–15; *Thomas*, 582 F. App'x at 680. Applying these rules at the pleading stage, the court in *Tuso v. Nat'l Health Agents, LLC* dismissed with prejudice the two entities on whose behalf the telemarketer allegedly called, because the complaint pleaded no fact that either "directed, instructed, or commanded" the caller, no manifestation by either to the plaintiff, and no knowledge of the calls or receipt of a benefit from them. No. 2:20-cv-02130-JAM-CKD, 2021 WL 2534220, at *2–4 (E.D. Cal. June 21, 2021).

The SAC pleads none of this as to Range View. It does not allege that Range View retained, paid, instructed, contracted with, or controlled BRC or anyone else who called Mr. James. What it alleges instead are the Terms of Use of a website, a description of Range View by counsel in a different case, and a joint procedural motion in other litigation. SAC ¶¶ 16, 24. A website's terms of use govern the relationship between the website and its users; that they list Range View and BRC among the contracting "Companies," SAC ¶ 24, says nothing about who called Mr. James, at whose direction, or whether Range View controlled anything BRC did. A description of Range View in

another case, and a joint motion to consolidate other cases, are litigation conduct, not a manifestation of assent that BRC place calls on Range View's behalf. The SAC's conclusion that Range View is "a joint venturer with the entity Defendants," *id.*, is a label, and the SAC pleads none of the facts a joint venture requires — a shared undertaking, a sharing of profits and losses, or joint control. *See Holtz v. United Plumbing & Heating Co.*, 49 Cal. 2d 501, 506–07 (1957).

Shared branding and a common website do not fill the gap. In *Abante Rooter & Plumbing v. Farmers Group, Inc.*, the callers identified themselves with the defendant's brand, and one appeared on the defendant's website. The court held that this supported an inference of "some relationship," "[b]ut that inference is not enough because it still does not allow the court to infer that defendant exercises control over the representatives." No. 17-cv-03315-PJH, 2018 WL 288055, at *5 (N.D. Cal. Jan. 4, 2018) (dismissing TCPA claim). And paragraph 18's allegation that each Defendant "acted as the agent, servant, employee, alter ego, co-venturer, and/or representative of each other Defendant" adds nothing. The Ninth Circuit does not credit that formula: it is "a conclusory legal statement unsupported by any factual assertion regarding [the parent's] control over [the subsidiary] (or regarding any other aspect of the parent-subsidiary relationship)." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 n.5 (9th Cir. 2017); *accord Hamilton*, 2020 WL 2614625, at *2.

### C. Alter Ego, "Single Enterprise," and Joint Venture Do Not Supply the Missing Facts.

Unable to tie the Moving Defendants to the calls, the SAC seeks to impute BRC's conduct to them by collapsing four Defendants and a dozen or more non-parties into "the Better Enterprise." SAC ¶¶ 19–32. California alter-ego liability requires (1) such unity of interest and ownership that the separate personalities of the entity and its owner do not in reality exist, and (2) an inequitable result if the acts are treated as those of the entity alone. *Blizzard Energy, Inc. v. Schaefers*, 71 Cal. App. 5th 832, 848–49 (2021). Both prongs must be pleaded with facts, not conclusions. *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1060, 1062 (S.D. Cal. 2017); *see Iqbal*, 556 U.S. at 678. And alter ego is not itself a source of liability: it is "merely . . . a procedural

mechanism" for holding an owner jointly liable for the entity's own wrong. *Int'l Petroleum Prods. & Additives Co. v. Black Gold S.A.R.L.*, 115 F.4th 1202, 1216 (9th Cir. 2024) (internal quotation marks and citation omitted).

**1. The unity-of-interest allegations describe an ordinary corporate family.**

Strip the rhetoric and the SAC alleges that the affiliates share an office building, an email domain, a legal department, and defense counsel; that the individuals own them through management and holding companies; and that three non-parties restated their articles on the same day in 2023. SAC ¶¶ 21–28, 31. Common ownership, common officers, and a common address are features of every corporate family. They show that the entities are affiliated — which Defendants do not dispute — not that any entity is a sham. "Total ownership and shared management personnel are alone insufficient to establish the requisite level of control." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015). Even "[t]he mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law." *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004). A court in this Circuit applied those rules to a TCPA complaint with allegations much like these: two affiliates "owned and operated by the same management," sharing an office and suite, whose agents used each other's callback numbers, and which the plaintiff alleged were "one and the same, working for and representing each company interchangeably." Tuso, 2021 WL 2534220, at *6. The court held that those allegations did not "plausibly suggest" pervasive control, that the "one and the same" assertion was conclusory, and — because the plaintiff had already amended once — dismissed with prejudice. *Id.* at *7. "Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Riot Games, Inc. v. Suga PTE, Ltd.*, 638 F. Supp. 3d 1102, 1120 (C.D. Cal. 2022) (citation omitted). Overlapping officers are "a normal attribute of ownership," and standing alone are not evidence of unity of interest. *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1138–39 (C.D. Cal. 2015) (citation omitted). The same is true of shared lawyers. Under California law, the control "normal and expected from the status of ownership" comprehends "such common characteristics

as interlocking directors and officers, consolidated reporting, and shared professional services." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 540–41 (2000) (personal-jurisdiction context). A common general counsel and common defense counsel, SAC ¶¶ 23, 25, are shared professional services. See Black *v. USHealth Advisors, LLC*, No. 1:25-cv-1365-CLM, 2026 WL 2825908, at *5 (N.D. Ala. Sept. 21, 2026) (in TCPA action, alter ego "cannot succeed if based solely on the fact that a parent company 'performs some coordinating functions for its subsidiaries,' like the coordination of 'legal affairs'" (citation omitted)). Stacking these ordinary features does not change their character: "The sum of a series of zeros, no matter how many, is still zero." *Sonora Diamond*, 83 Cal. App. 4th at 551 (rejecting aggregation of individually insufficient factors). The factors that actually bear on unity of interest — commingling of funds, disregard of corporate formalities, inadequate capitalization, use of an entity as a mere conduit — appear in a single sentence, on information and belief, with no supporting fact. SAC ¶ 30. That is a recital of the doctrine, not an allegation of facts satisfying it. *See Gerritsen*, 116 F. Supp. 3d at 1144 (undercapitalization allegations that were "conclusory" did not plead the element).

**2. The SAC pleads no inequitable result.**

The inequitable-result prong requires "facts sufficient to demonstrate that conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form." *Wells Fargo Bank, N.A. v. Stewart Homes, Inc.*, 732 F. Supp. 3d 1169, 1182 (C.D. Cal. 2024) (internal quotation marks and citation omitted). The SAC alleges only that adherence to the corporate form "would sanction fraud and promote injustice, because the individual Defendants use the web of Better entities to insulate themselves from liability for the Enterprise's unlawful telemarketing." SAC ¶ 32. Insulation from personal liability is what limited liability is. "[C]onclusory allegations that [a defendant] structures companies to escape liability are insufficient," *Fleites v. MindGeek S.A.R.L.*, 801 F. Supp. 3d 1045, 1092 (C.D. Cal. 2025) (quoting *In re Boon Global Ltd., 923 F.3d 643, 654 (9th Cir. 2019)) (alter ego asserted for personal jurisdiction), and* the TCPA plaintiff in *Tuso* lost on this prong for the same reason: the contention that the affiliates' structure was "designed, at least in part, to obfuscate and limit liability and

exposure for TCPA violations" was a "bald contention" with no supporting facts. 2021 WL 2534220, at *7. Rejecting a similar allegation that a corporate structure existed to avoid legal obligations, another court in this District observed that "almost every business enterprise in the United States ultimately forms some sort of corporate entity for the purpose of avoiding personal liability," and that "[t]he underlying cause of action cannot supply the necessary fraud or injustice prong." *Fleites*, 801 F. Supp. 3d at 1092 (internal quotation marks and citations omitted). The SAC's only allegation of undercapitalization is ¶ 30's information-and-belief recital as to "the Better entities" collectively. It alleges no fact suggesting that BRC — the entity it says placed the calls, and which is a party here — is undercapitalized, judgment-proof, or unable to answer for its own conduct. Dismissal is required where this prong is not pleaded. *In re Packaged Seafood*, 242 F. Supp. 3d at 1062.

**3. As to Range View, the SAC pleads the theory out.**

The SAC's unity-of-ownership theory runs through the individuals and their "matched pair[s]" of management and holding entities. SAC ¶ 21. Range View is outside that structure by the SAC's own account: its "sole manager and member is Payam Sadeghi," SAC ¶ 16, who is not a defendant, is not alleged to own or control any other entity, and appears nowhere else in the pleading. The management entities are alleged to manage other affiliates, "including Better Tax Relief, Better Lead Generation LLC, and MG Motors, and, on information and belief, Lendvia and Better Debt Solutions" — not Range View. SAC ¶ 21. A defendant that is owned by someone else cannot be the alter ego of owners who do not own it. The SAC was on notice of this defect, ECF 18 at § IV.F, and repeated the allegation that creates it.

**4. "Single enterprise" and joint venture are labels.**

Under California law, the single-enterprise theory is a form of alter ego, not a separate basis of liability: "common principles apply regardless of whether the alleged alter ego is based on piercing the corporate veil to attach liability to a shareholder or to hold a corporation liable as part of a single enterprise," and California has adopted the single-enterprise theory "including the abuse or injustice requirement." *Toho-Towa Co. v. Morgan Creek Prods., Inc.*, 217 Cal. App. 4th 1096,

1108 & n.4 (2013). And the theory "concerns liability between sister corporations, not liability imposed on individual shareholders." *Fleites*, 801 F. Supp. 3d at 1094 (citing *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1249 (1991)). It therefore cannot reach Mr. Ghanbari or Mr. Ghafarinia at all, and as to Range View it rises or falls with the showing of unity of interest and inequitable result, and the SAC makes neither. The joint-venture characterization fails for the reasons stated in Section IV.B.2.

**D. The Collective Pleading Independently Fails Rule 8.**

The SAC defines all four Defendants as "the Better Enterprise" and alleges that "Defendants" placed the calls, rotated the caller identification numbers, and delivered the prerecorded messages, SAC at 1; ¶¶ 3–4, 41–44, 60, without identifying which Defendant did what. Where the SAC descends to particulars, it names only BRC. SAC ¶¶ 14, 45. A complaint must give each defendant notice of what it is alleged to have done, and "everyone did everything" allegations do not. *Destfino*, 630 F.3d at 958–59 (Rules 9(b) and 8(a)(2)). The rule applies with particular force to individual TCPA defendants: "When a plaintiff asserts a TCPA claim against multiple defendants, he must differentiate which allegations apply to which defendant—it is not enough to say that a group of defendants violated the statute." *Hamilton*, 2020 WL 2614625, at *2. The pleader knew precisely which entity to name when he had facts, SAC ¶ 45, and substituted the collective when he did not.

**E. Dismissal Should Be Without Further Leave to Amend.**

Leave to amend may be denied where amendment would be futile or "the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012), *quoted in* ECF 30 ¶ 2. Where a plaintiff "has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, '[t]he district court's discretion to deny leave to amend is particularly broad.'" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (citation omitted). *See also Destfino*, 630 F.3d at 958–59 (affirming dismissal with prejudice of a complaint that continued to make "everyone did everything" allegations after the district court identified the defect; "[p]laintiffs had three bites at the apple"); *Tuso*, 2021 WL 2534220, at *4, *7 (dismissing TCPA alter-ego and

vicarious-liability claims with prejudice after one amendment where plaintiff "failed to" proffer additional facts). This is Plaintiff's third attempt to state viable claims against moving parties. When Defendants first moved to dismiss them, Plaintiff filed no opposition. The Court deemed that silence consent under Local Rule 7-12 and noted that "failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue." ECF 30 at 2 (quoting *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011)). Defendants do not contend that the Court's order decided the merits or that it is law of the case; the SAC is a new pleading reviewed on its own allegations. *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018). But *Askins* also holds that a defendant "may urge the district court to determine that the plaintiff's amended complaint did not cure the deficiencies of the initial complaint," and that if the amended complaint "is substantially the same as the initial complaint, the district court is free to follow the same reasoning and hold that the amended claims suffer from the same legal insufficiencies." *Id.* That is this case. The Court's order framed what the SAC had to accomplish — leave was granted "to address the deficiencies identified in Defendants' motion to dismiss," ECF 30 ¶ 2 — and the SAC did not accomplish it. This Court has granted leave on a first motion precisely because it "ha[d] not previously ruled on a motion to dismiss." *Milkcrate Athletics, Inc. v. Adidas Am., Inc.*, 619 F. Supp. 3d 1009, 1022 (C.D. Cal. 2022). Plaintiff had ECF 18 in hand for nearly a month before filing the SAC, yet added no facts as to the Moving Defendants; as to the individuals, he removed facts rather than adding them. The SAC's silence on what Mr. Ghanbari, Mr. Ghafarinia, or Range View did in connection with any call to Mr. James — after a motion identifying exactly that gap — is the best evidence that no such facts exist. Where the only amendment in view would "merely be additional conclusory allegations," denial of leave is proper. *Blantz*, 727 F.3d at 927. Dismissal as to the Moving Defendants should be without leave. In the alternative, any further leave should be conditioned on Plaintiff pleading, as to each Moving Defendant specifically, the call that Defendant is alleged to have made or directed and the facts by which any caller acted as its agent.

**F. The Court Should Strike the Fabricated-Consent Passage of Paragraph 65.**

All Defendants move to strike a single passage of paragraph 65: the sentences beginning "Defendants' knowledge is further reflected in the Enterprise's practice" and ending "without the consent the TCPA requires." Matter is "immaterial" if it "has no essential or important relationship to the claim for relief or the defenses being pleaded," and "impertinent" if it "do[es] not pertain, and [is] not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (citation omitted), *rev'd on other grounds*, 510 U.S. 517 (1994). Rule 12(f) may not be used to obtain dismissal of a claim, *Whittlestone*, 618 F.3d at 974–75, and Defendants do not use it that way: the passage can be removed without affecting the SAC's claim for relief or its willfulness allegations, which is precisely why it is immaterial.

The passage accuses Defendants of "generating after-the-fact electronic 'consent' or lead-verification certificates purporting to show consumer assent that did not occur, and asserting them to claim consent and to compel arbitration." SAC ¶ 65. Mr. James does not allege that any consent record, lead-verification certificate, or arbitration agreement was ever created for him or asserted against him. The accusation is a carry-over from Mr. McBride's claims, which the Court has compelled to arbitration. ECF 30 ¶ 1. Plaintiff's own amendment confirms as much: the SAC deleted the consent-fabrication allegations from every other paragraph of the FAC in which they appeared, including the entire second claim for relief, and kept them only here. Compare FAC ¶¶ 1–2, 6, 11, 16, 22–23, 28, 30, 36, 39, 54–65, 67, 73–74, 78, 85–91 with SAC ¶ 65. As to Mr. James it has "no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy*, 984 F.2d at 1527.

Defendants recognize that allegations of forgery and fraud are not immaterial when they go to the plaintiff's own claim. In *Petrie v. Electronic Game Card, Inc.*, the Ninth Circuit reversed an order striking such allegations because "[e]vidence of forgery and fraud clearly has an 'essential or important relationship' to Investors' claim for relief in their securities fraud action." 761 F.3d 959, 967 (9th Cir. 2014). The fraud there was the claim. Here it is not: Mr. James's claim turns on whether prerecorded calls were placed to his cellular telephone without his consent, and he does

not allege that Defendants have ever claimed his consent, produced a record of it, or sought to arbitrate with him. Nor does the passage bear on willfulness. The SAC separately pleads the matters it relies on for that purpose — rotating caller identification numbers, the cadence of the calls, and the other actions listed in paragraph 48 — and those allegations are unaffected by this motion. SAC ¶¶ 42, 44, 48, 65. A practice of generating consent records after a claim is made, even if it existed, could say nothing about Defendants' state of mind in calling a person as to whom no such record was ever generated or asserted.

The passage also carries a cost that its absence of relevance cannot justify. It accuses Defendants of fabricating evidence, without a single supporting fact specific to Mr. James, in a public filing. And if it remains, it will be the basis for discovery into the formation of other consumers' agreements — including Mr. McBride's, the very dispute the Court sent to arbitration — and into a "practice" unconnected to any call to Mr. James. Rule 12(f) exists "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone*, 618 F.3d at 973 (citation omitted).

## V. CONCLUSION

Defendants respectfully request that the Court (1) dismiss the Second Amended Complaint as against Arsalan Ghanbari, Mohammad Ghafarinia, and Range View Management LLC without leave to amend; and (2) strike the portion of paragraph 65 of the Second Amended Complaint beginning "Defendants' knowledge is further reflected in the Enterprise's practice" and ending "without the consent the TCPA requires."

Dated: October 7, 2026

ISKANDER LAW

By: [signature]

Mario Iskander
Attorneys for Defendants

**CERTIFICATE OF COMPLIANCE (L.R. 11-6.2)**

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,944 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 7, 2026

ISKANDER LAW

By: ______________________________

Mario Iskander
Attorneys for Defendants

**PROOF OF SERVICE**

I am over the age of 18 and not a party to this action. My business address is:

1111 N. Brand Blvd., Suite 308, Glendale, California 91202.

On October 7, 2026, I caused the foregoing document(s):

**DEFENDANTS ARSALAN GHANBARI, MOHAMMAD GHAFARINIA, AND RANGE VIEW MANAGEMENT LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT [FED. R. CIV. P. 12(b)(6)]; ALL DEFENDANTS' MOTION TO STRIKE [FED. R. CIV. P. 12(f)]; MEMORANDUM OF POINTS AND AUTHORITIES**

to be served through the Court's CM/ECF system on all counsel of record registered to receive electronic service, including:

Mark L. Javitch (CA SBN 323729)
JAVITCH LAW OFFICE
3 East 3rd Ave., Ste. 200
San Mateo, CA 94401
mark@javitchlawoffice.com
Attorney for Plaintiff Joseph James

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746. Executed on October 7, 2026, at Glendale, California.

Mario Iskander